**Richard BOURQUE**

v.

**FRANK X. POMERLEAU, INC. et al.**

Supreme Judicial Court of Maine.

Argued Jan. 9, 1984.

Decided March 5, 1984.

Lipman & Parks, Bruce R. Livingston (orally), Augusta, for plaintiff.

Locke, Campbell & Chapman, John A. Mumm (orally), Augusta, for defendants.

Before McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

The employee, Richard Bourque, appeals from a decision of the Appellate Division of the Workers' Compensation Commission that affirmed a single commissioner's denial of his petition for further compensation. Bourque's petition for further compensation was based on the claim that he continued to suffer a partial incapacity as the result of a work-related injury sustained on October 4, 1974, while he was employed by Frank X. Pomerleau, Inc. ("Pomerleau"). *See* 39 M.R.S.A. § 55 (Supp.1983–1984).[1] Because we find that the commissioner improperly applied the standard contained in section 55

---

1. 39 M.R.S.A. § 55 provides:
    While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compen-

sation equal to ⅔ the difference, due to the injury, between his average gross weekly wages, earnings or salary before the injury and the weekly wages, earnings or salary

to Bourque's claim of partial incapacity, we sustain the appeal and remand the case for further proceedings consistent with this opinion.

### I.

Richard Bourque received compensable injuries at four different times during his employment with Pomerleau. Only the first and last of those injuries is directly in issue in this case. The first injury, which forms the basis of Bourque's petition for further compensation, occurred on October 4, 1974, when Bourque was working for Pomerleau on a job involving heavy labor. An agreement for compensation benefits entered into between Bourque and Pomerleau following that injury described the nature of the accident and injury as a

> direct double hernia while carrying a roll of carpet. Two helpers dropped the carpet, Bourque in middle & supported the entire load.

The compensation agreement listed the employee's average weekly wage at the time of the 1974 injury as $238.78. By agreement, benefits were discontinued on December 31, 1974, when Bourque returned to work.[2]

On September 19, 1975, Bourque suffered a second work-related injury, which was described in a subsequent compensation agreement as "injury to back—torn muscles along spine in area of right scapula." That agreement, which listed the employee's average weekly wage as $192.73, was a closed-end agreement, paying benefits from September 20, 1975, through September 25, 1975. After undergoing rehabilitation, Bourque returned to work in June of 1976 in a new capacity, as a dispatcher of the company trucks. He was injured for the third time on November 17, 1976, suffering a hernia while helping co-workers move a sofa hide-a-bed. This injury resulted in a closed-end agreement running from December 9, 1976, to January 26, 1977, which listed the employee's average weekly wage as a dispatcher at $194.13.

Bourque subsequently returned to his job as a dispatcher, but as the result of nervous anxiety was unable to continue in that capacity after May 9, 1977. Bourque filed a claim for compensation with respect to this fourth, anxiety-related injury. He settled that 1977 claim by a lump sum agreement of $3,000, which was approved by the Workers' Compensation Commission. Bourque never returned to work for Pomerleau after his last injury but did obtain a job at the Kennebec Journal, which paid $129.60 per week at the end of 1977 and $162.40 per week in 1980, when he filed his present petition for further compensation.

The only medical evidence before the commissioner was the deposition of Bourque's doctor, Harry M. Peddie. Following the first injury in 1974, Bourque was examined by Dr. Peddie's associate, who diagnosed Bourque as suffering from a hernia and a lower back injury. Peddie himself examined Bourque in February of 1976 following the second injury. He stated that at that time Bourque should have been restricted to work that involved

> [n]o bending and lifting of weights over 30 pounds. . . . He could have done medium work if it did not entail bending and lifting.

Dr. Peddie diagnosed continuing back injuries in October of 1977 and again in December of 1980. Based on his data from the

---

which he is able to earn thereafter, but not more than 166⅔% of the average weekly wage in the State as computed by the Employment Security Commission; and such weekly compensation shall be adjusted annually so that it continues to bear the same percentage relationship to the average weekly wage in the State as computed by the Employment Security Commission, as it did at the time of the injury. The annual adjustment required by this section shall be made on the anniversary date of the injury, except that, where the injury occurred prior to July 1, 1983, or where the effect of the 166⅔% maximum is to reduce the amount of compensation to which the claimant would otherwise be entitled, the adjustment shall be made annually on July 1st.

2. Whether Bourque returned to the same job is not clear to the court from the record before it.

December, 1980, examination, the doctor stated that he would continue to restrict Bourque from lifting anything over 20 to 30 pounds. He also concluded that Bourque's continuing incapacity to do heavy work was related to the 1974 injury.

In denying Bourque's petition for further compensation, the single commissioner found

> that any loss of any capacity was due to [Bourque's] inability to work as a dispatcher for the employer and that the employee has already been compensated for that injury.

## II.

An employee in Bourque's position following the October 4, 1974, injury is normally entitled to recover benefits for partial incapacity under a petition for further compensation "if his capacity to earn has been impaired as a result of his work related injury."[3] *Mailman v. Colonial Acres Nursing Home,* 420 A.2d 217, 220 (Me.1980) (quoting *McQuade v. Vahlsing, Inc.,* 377 A.2d 469, 471 (Me.1977)). The employee bears the burden of showing 1) that he suffers an earning incapacity and 2) that that incapacity is causally connected to the work-related injury. *See McLellan v. Georgia-Pacific Corp.,* 444 A.2d 427, 430 (Me. 1982); *Franzose v. Alco Packing Co.,* 433 A.2d 412, 414 (Me.1981). If the employee carries his burden of proof, he is entitled to weekly benefits

> equal to ⅔ the difference, due to the injury, between his average gross weekly wages, earnings or salary before the injury and the weekly wages, earnings or salary which he is able to earn thereafter
> . . . .

39 M.R.S.A. § 55. This formula requires "a comparison of pre-injury wages and post-injury earning ability." *McLellan v. Georgia-*

*Pacific Corp.,* 444 A.2d at 430. With respect to the October 4, 1974, injury the statutory formula would yield a recovery measured as ⅔ the difference between the employee's average weekly wage before the injury ($238.78) and his capacity to earn thereafter.[4]

The novel issue presented by this appeal is what effect the employee's lump sum settlement of the 1977 anxiety-related injury should have on his petition for further compensation for the 1974 injury. Both the single commissioner and the Appellate Division apparently concluded that the lump sum settlement of the anxiety-related claim precluded an award of further compensation in connection with the earlier back and groin injuries. We find this conclusion inconsistent with both the terms of the lump sum agreement and the provisions of the Workers' Compensation Act. Under the settlement agreement entered into between Bourque and Pomerleau, which was approved by the commission, Bourque requested

> that all compensation which may be or become due me in weekly payments from said employer on account of my injury of May 9, 1977, be commuted by your Commission, and that payment thereof be made in a Lump Sum of $3,000.00 according to the provisions of the Workmen's Compensation Act . . . .

39 M.R.S.A. § 71 (Supp.1983–1984) provides that "[u]pon payment of any lump sum approved by the commission, the employer shall be discharged from all further liability on account of the injury . . . ." Both the agreement and the statute make clear that the lump sum settlement commutes liability for benefits only for the injury that is the subject of the agreement.

We also disagree with the employee's contention that the lump sum settlement should have no effect whatsoever on his

---

**3.** Discontinuation of benefits and return to work does not prevent a finding of partial incapacity provided it is demonstrated that the post-injury employment reflects a diminished work capacity. *See Mailman v. Colonial Acres Nursing Home,* 420 A.2d 217, 220 (Me.1980);

*see also Rines v. Scott,* 432 A.2d 767, 772 (Me. 1981).

**4.** The amount of this recovery is subject to statutory limitations and adjustments. *See* n. 1 above.

ability to recover for partial incapacity resulting from the October 4, 1974, injury. Bourque's argument assumes that his ability to earn on his 1974 job involving heavy labor and his ability to earn as a dispatcher are distinct earning capacities for the purpose of the Workers' Compensation Act such that he may recover benefits twice over if both abilities are impaired. We reject this notion. "Compensation is awarded for loss of capacity to earn, not for incapacity to do the same kind of work as before the injury." *Theriault v. Walsh Construction Co.,* 389 A.2d 317, 320 (Me. 1978). However, while Bourque may not collect twice for the loss of earning capacity, his claim for partial incapacity resulting from the 1974 injury remain valid to the extent it *exceeds* the potential claims commuted by the lump sum settlement of the 1977 anxiety-related injury.

On November 17, 1978, when the lump sum settlement for the anxiety-related injury was entered into between Bourque and Pomerleau, Bourque had been employed at the Kennebec Journal for nearly a year and was earning $139.00 per week. Under the statutory scheme of the Workers' Compensation Act, Bourque's maximum potential claim for weekly benefits at the time of the settlement was therefore a claim of partial incapacity pursuant to 39 M.R.S.A. § 55. As applied to the 1977 injury, the formula for benefits contained in section 55 would yield compensation measured as ⅔ the difference between his average weekly wage before that injury, which the record indicates was $194.13, and his earning capacity thereafter. However, his average weekly wage prior to the 1974 injury had been $238.78. He has therefore not settled his claim for partial incapacity resulting from that injury to the extent that his average weekly wage prior to that injury ($238.78) exceeded his average weekly wage before the 1977 injury (apparently $194.13).

The decisions of both the single commissioner and the Appellate Division plainly indicate that although both tribunals were aware of the danger of double recovery, they failed to consider the analysis outlined above whereby Bourque might be entitled to benefits *beyond* those that were settled by the lump sum agreement for the 1977 anxiety-related injury. Because both tribunals overlooked that analysis they failed to consider two factual matters that Bourque was required to prove in order to establish a right to additional partial compensation, namely: 1) that he was suffering an earning incapacity as a result of an inability to do the type of heavy labor he was capable of doing prior to the 1974 injury, and 2) that that incapacity was causally connected to the 1974 injury.[5] We therefore remand the case for further hearing before a single commissioner so that both the employee and the employer may introduce additional evidence as to those factual matters and so that, if the employee sustains his burden of proof, the commissioner may determine the proper amount of benefits owing.

The entry is:

The decision of the Appellate Division is vacated. Remanded with directions for entry of an order vacating the commissioner's denial of the petition for further compensation, and remanding to the commissioner for rehearing consistent with the opinion herein.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550, together with his reasonable out-of-pocket expenses for this appeal.

All concurring.

5. It is possible on remand, for example, that the single commissioner will find as a fact from the evidence before him that Bourque suffers from incapacity to perform heavy work, but that such incapacity is causally connected only to the September 19, 1975, injury. That conclusion would require no award of additional benefits, since Bourque's average weekly wage before the September 15, 1975, injury was $192.73, less than his apparent average weekly wage as a dispatcher at the time of the 1977 anxiety-related injury.