Mary KENNEDY

v.

**BRUNSWICK CONVALESCENT CENTER, et al.**

Supreme Judicial Court of Maine.

Argued Oct. 2, 1990.
Decided Jan. 9, 1991.

Nelson Larkins (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for St. Paul Fire and Marine Ins. Co.

Stephen Moriarty (orally), Norman, Hanson & DeTroy, Portland, for Hartford Ins. Co.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

BRODY, Justice.

Hartford Insurance Company (Hartford) appeals from a decision of the Appellate Division of the Workers' Compensation Commission vacating the decree of a single commissioner granting Hartford's petition for apportionment against St. Paul Fire and Marine Insurance Company (St. Paul). The Appellate Division held that the commissioner erred in granting Hartford's petition for apportionment because she had earlier approved lump sum settlements of the employee's claims against both insurers. We agree and affirm the Appellate Division's decision.

The employee, Mary Kennedy, suffered two work-related injuries to her right hand and wrist while working as a certified nurse's aide at Brunswick Convalescent Center. When she was first injured in 1984, the employer was insured for workers' compensation purposes by St. Paul, which accepted the employee's claim and paid her benefits until she returned to work a year later. At the time of her second injury in 1986, the employer was insured by Hartford, which also accepted the employee's claim and paid her benefits.

In December of 1987, Hartford filed a petition for apportionment with the Workers' Compensation Commission. The employee's treating physician stated in his deposition that the initial injury was seventy percent responsible and the second injury thirty percent responsible for her disability. The commissioner dictated the decree granting Hartford's petition on January 1, 1989.

Before the decree was issued, however, the employee settled her claims against her employer and the two insurers by separate

lump sum settlements. The same presiding commissioner approved the two settlements after a hearing on January 6, 1989. The commissioner's docket entry for that date provided that the apportionment decree dictated five days earlier was to issue despite the lump sum settlements.

On February 8, 1989, the commissioner issued the decree granting Hartford's petition for apportionment and ordering St. Paul to reimburse Hartford for seventy percent of all benefits paid by Hartford since the employee's second injury plus seventy percent of permanent impairment benefits. At St. Paul's request, the commissioner issued her findings of fact and conclusions of law along with a supplemental decree affirming her initial decision.

St. Paul filed a timely appeal with the Commission's Appellate Division, which vacated the commissioner's decree and denied Hartford's petition for apportionment. The Appellate Division held that the commissioner erred in granting Hartford's petition after having approved a final lump sum settlement for each of the insurers involved in the apportionment proceeding. We granted Hartford's petition seeking discretionary review by this court.

Our role on an appeal from a decision of the Appellate Division is strictly limited to reviewing for errors of law. *Kuvaja v. Bethel Sav. Bank*, 495 A.2d 804, 806 (Me. 1985). Because the Appellate Division is an intermediate tribunal, we review the commissioner's decision directly and independently. *Harvie v. Bath Iron Works Corp.*, 561 A.2d 1023, 1024 (Me.1989); *Lagasse v. Hannaford Bros. Co.*, 497 A.2d 1112, 1119 (Me.1985). We also conclude that the commissioner erred.

■ An insurer's right to apportion is both defined and limited by the Workers' Compensation Act. Section 104–B [1] of the Act expressly provides that the only rights that an insurer may enforce through the apportionment process are those belonging to the employee. 39 M.R.S.A. § 104–B(3) (1989).[2] Thus, whether Hartford had any rights that it could enforce against St. Paul through the apportionment process depends on whether the employee had any rights under the Act that she could enforce against St. Paul.

Hartford contends that the employee's settlement with St. Paul did not preclude apportionment for benefits paid her before the settlement was approved. Citing 39 M.R.S.A. § 71 (1964),[3] since repealed, Hart-

---

**1.** Section 104–B provides in pertinent part:
   **2. Liability to employee....** [I]f an employee has sustained more than one injury while employed by the same employer and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act.
   **3. Subrogation.** Any insurer determined to be liable for benefits under subsection 2 shall be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Any such insurer may, in accordance with rules prescribed by the commission, file a petition for an apportionment of liability among the responsible insurers....
   39 M.R.S.A. § 104–B (1989).

**2.** Our reading of the statute accords with that of the Appellate Division. In *Scott v. Hunt Lumber Co.*, No. 88–140 at 6 (Me. Workers' Comp. Comm'n App.Div. Aug. 11, 1988), the Appellate Division stated that "[u]nder the doctrine of subrogation, the insurer only takes those rights which the employee may have, subject to any defenses which may be available to prior insurers."

**3.** Section 71 provided in pertinent part:
   In any case where compensation is being paid or is claimed on account of any injury or death, either the employer, or the employee or his dependents, may petition the commission for an order commuting all payments on account of such injury or death that may become due in the future, to a lump sum.... Upon payment of any lump sum approved by the commission, the employer shall be discharged from all further liability on account of the injury or death and be entitled to a duly executed release; upon filing which, or other due proof of payment, the liability of such employer under this Act shall be discharged of record, and the employee accepting the lump sum settlement shall receive no further compensation or other benefits on account of the injury or death under this Act.
   39 M.R.S.A. § 71 (1964), repealed by P.L.1987, ch. 559, pt. B, § 36 (effective Nov. 20, 1987). Section 71 was replaced by 39 M.R.S.A. § 71–A (1989 & Supp.1990), which authorizes lump sum payments in the case of injuries occurring on or after November 20, 1987.

ford argues that the lump sum settlement with St. Paul applied not to benefits already paid but only to benefits which were to come due in the future. This argument ignores the plain language of the statute. Section 71 provided that "[u]pon payment of any lump sum approved by the commission, the employer shall be discharged from all further liability on account of the injury ... and *the employee accepting the lump sum settlement shall receive no further compensation or other benefits on account of the injury* ... under this Act." *Id.* (emphasis added).

■ Hartford next argues that the commissioner's apportionment decree takes precedence over the lump sum settlements because the evidence on the petition for apportionment had been closed and the decree dictated at the time the settlements were approved. As approved by the same commissioner, however, the lump sum settlement agreements expressly provided that the employee released the employer and each insurer "from all further liability for this injury" and that "all pending petitions based on this claim are hereby dismissed." Moreover, there was neither an order of severance nor any reservation of rights in anticipation of the issuance of an apportionment decree.

■ Hartford also contends that St. Paul's failure to object to the commissioner's decision to sever the apportionment and lump sum settlement issues at the time of settlement constitutes a waiver of the issue for purposes of appeal. This argument is unpersuasive. It is unclear whether an objection was even required in this situation. Furthermore, although the record is silent on this point, St. Paul claims that it did object and request a dismissal of Hartford's petition for apportionment at the time the lump sum settlements were approved.

■ By entering into a lump sum settlement with St. Paul, therefore, the employee released all of her rights under the Workers' Compensation Act against that insurer. Upon the commissioner's approval of the settlement, the employee no longer had any rights against St. Paul that Hartford could

enforce through the apportionment process. Absent an order of severance or reservation of rights, the commissioner erred in ruling otherwise.

Accordingly, we find no error in the Appellate Division's decision to vacate the commissioner's decree and deny Hartford's petition for apportionment because the commissioner had earlier approved lump sum settlements of the employee's claims against both insurers involved in the apportionment proceeding. Those settlements finalized the rights and responsibilities of the parties.

The entry is:

Decision affirmed.

McKUSICK, C.J., and WATHEN, GLASSMAN and COLLINS, JJ., concur.

ROBERTS, Justice, with whom CLIFFORD, J., joins, dissenting.

I respectfully dissent. Nothing in the Worker's Compensation Act compels the result reached by the Court, and yet much of the purposes and policies of the Act suggest a contrary result.

The settlement of "all payments ... that may become due in the future" by payment of a lump sum may often be in the best interest of the employee. See former section 71 of the Act. That settlement ought not be delayed by a dispute between insurance carriers over apportionment of benefits previously paid by the carrier on the last injury as required by section 104–B. In the present case, the Commissioner acted within her discretion and in accord with the purposes of the Act when she noted that the apportionment decision should issue despite the commutation of all *future* payments. Nothing in the record before us suggests that the two insurance carriers intended their separate settlements of Kennedy's claim for *future* benefits to affect the pending dispute over apportionment of *past* benefits. Indeed, St. Paul requested findings of fact on the apportionment decision but did not object to its issuance. I would conclude that the docket notation as well as the subsequent decree and findings

of fact all served effectively to sever the issue of the apportionment of benefits already paid by Hartford.

St. Paul contends, however, that the boilerplate language of form WCC–10, entitled "Commutation of Benefits or Compromise Settlement," precluded such a severance. St. Paul points to the "Release" portion wherein the employee releases "the employer and insurer" from further liability and to the "Decision" portion wherein the Commissioner approves the settlement and dismisses "all pending petitions based on this claim". St. Paul insists that there was nothing left to be dealt with separately because its liability was totally extinguished.

It makes no sense that Hartford, not a party to St. Paul's settlement of *future* benefits, should lose the right to receive from St. Paul its proportionate share of *prior* payments. Section 71 deals with the commutation of future benefits payable to the employee. Section 104–B deals with subrogation "to the employee's rights ... for all benefits [Hartford] *has paid.*" (emphasis added) As a result, the section 71

settlement does not discharge St. Paul's accrued liability to Hartford. The language of section 71, "the employer shall be *discharged from all further liability,*" must, in this instance, be construed not to include St. Paul's liability to Hartford. Section 2 of the Act states that "[i]f the employer is insured, the term 'employer' includes the insurer unless the contrary intent is apparent from the context or is inconsistent with the purposes of this Act." In this case, the Court's interpretation of section 71 is inconsistent with the purposes of the Act, defies common sense and elevates form over substance.

Because I would not permit boilerplate language to defeat the clear intention of the Commissioner, I would approve the separation of the issues and affirm her decision.