2001 ME 63

**MAINE INSURANCE GUARANTY ASSOCIATION**

v.

**Robert A. FOLSOM et al.**

**No. CUM–00–308.**

Supreme Judicial Court of Maine.

Argued: Dec. 12, 2000.
Decided: April 23, 2001.

Alan J. Cooke (orally), Joseph C. Tanski, Steven Y. Quintero, Hutchins, Wheeler & Dittmar, Boston, MA, and John H. Rich III, Perkins, Thompson, Hinckley & Keddy, P.C., Portland, for plaintiff.

Peter B. Bickerman (orally), Charles C. Soltan, Verrill & Dana, LLP, Augusta, for defendants Gorbell/Thermo Electron Power Co. and Hanover Ins. Co. James C. Hunt (orally), Robinson Kriger & McCallum, Portland, for defendants, Wayne Washburn and Liberty Mutual Ins. Co. Kenneth A. Lexier, Wright & Mills, P.A., Skowhegan, for defendant, Robert Folsom.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Two Workers' Compensation insurers, Liberty Mutual Insurance and Hanover Insurance Company, appeal a summary judgment entered in the Superior Court (Cumberland County, *Delahanty, J.*), declaring that the insurers may not seek an apportionment against Maine Insurance Guaranty Association (MIGA) for the proportionate share of the employee Robert A. Folsom's workers' compensation benefits owed by an insolvent insurer, American Mutual Insurance Company, pursuant to 24–A M.R.S.A. § 4443 (2000). We affirm the judgment.

[¶ 2] The facts are not in dispute. Folsom suffered three work-related injuries while employed as a wood-cutter. The first injury occurred in 1982, while his employer was insured by Liberty Mutual; the second injury occurred in 1983, while his employer was insured by American Mutual; and the third injury occurred in 1992, while his employer was insured by Hanover. American Mutual was determined insolvent in March of 1989. MIGA administers American Mutual's claims pursuant to 24–A M.R.S.A. §§ 4431–4452 (2000 & Supp.2000).

[¶ 3] In 1996 Folsom filed petitions for award and restoration against all insurers, including MIGA, acting on behalf of American Mutual. In 1998, a Hearing Officer of the Workers' Compensation Board granted the petitions and awarded ongoing partial incapacity benefits. The apportionment statute in effect at the time of the hearing, 39–A M.R.S.A. § 354 (Supp.1998), *amended by* P.L.1999, ch. 354, § 9, provided that arbitration before an arbitrator appointed by the Bureau of Insurance was the exclusive means for apportioning liability between insurers in multiple injury cases. *Rosetti v. Land Reclamation,* 1997 ME 197, ¶ 7, 704 A.2d 312, 315. The Hearing Officer concluded that he did not have authority to apportion liability between the insurers pursuant to section 354 and, therefore, ordered Hanover, as the most recent insurer, to pay full benefits.[1]

[¶ 4] MIGA filed a complaint in the Superior Court seeking a declaratory judgment that it is not liable to either Hanover or Liberty Mutual for an apportionment of Folsom's workers' compensation benefits. The parties stipulated to the essential facts and filed separate motions for a summary judgment, agreeing that a summary judgment would be appropriate in the absence of a factual issue. The Superior Court entered a summary judgment in favor of MCA, concluding that MIGA "is not obligated to pay worker compensation claims

---

1. Section 354 has since been amended to permit Hearing Officers to determine apportionment issues. P.L.1999, ch. 354, § 9; *Livingstone v. A–R Cable Servs. of Me.,* 2000 ME 18, ¶ 1 n. 1, 746 A.2d 901, 902 n. 1. Neither party contends that the amended section 354 applies to the present appeal.

of Robert Folsom to [Folsom] or any other insurer unless and until [Folsom] has exhausted all of his rights and benefits from other insurers under other policies and pursuant to 24–A M.R.S.A. § 4443." This appeal of the Superior Court decision by both Hanover and Liberty followed.

[¶ 5] MIGA was created by statute to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

24–A M.R.S.A. § 4432 (2000). One of MIGA's duties is to pay certain "covered claims" against insolvent insurers. Section 4438(1)(A) provides, in pertinent part:

**1. Powers and duties.** The association shall:

A. Be obligated to pay *covered claims* existing prior to the determination of the insolvency or arising within 30 days after the determination of insolvency, or before the policy expiration date if less than 30 days after the determination of insolvency, or before the insured replaces the policy or causes its cancellation, if within 30 days of the determination. The obligation shall be satisfied by paying to the claimant an amount as follows:

(1) Except as provided in this paragraph, the full amount of a covered claim for benefits or unearned premium under workers' compensation insurance coverage;

(2) An amount not exceeding $100,000 per policy *for a covered claim for the return of an unearned premium;* or

(3) An amount not exceeding $300,000 per claim for all other covered claims.

In no event is the association obligated to pay a claimant an amount in excess of the obligation of the insolvent insurer under the policy or coverage from which the claim arises. The association shall pay only that amount of unearned premium in excess of $50. Notwithstanding any other provisions of this subchapter, a covered claim shall not include any claim filed with the association after the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer.

24–A M.R.S.A. § 4438(1)(A) (2000) (emphasis added).

The term, "covered claims," is defined by the Act as follows:

**4. Covered claim.** "Covered claim" means an unpaid claim, including one for unearned premiums but excluding one for punitive damages, arising under and within the coverage and applicable limits of a policy of a kind of insurance referred to in section 4433 to which this subchapter applies issued by an insurer that becomes an insolvent insurer after My 9, 1970, and where:

A. The claimant or insured is a resident of this State at the time of the insured event; or

B. The property from which the claim arises is permanently located in this State.

*"Covered claim" does not include any amount due any insurer,* reinsurer, affiliate, insurance pool or underwriting association, *as subrogation recoveries or otherwise,* except that any payment made to the workers' compensation residual market pool pursuant to section 4438, subsection 1, paragraph A–1 must be included as a covered claim.

24-A M.R.S.A. § 4435(4) (2000) (emphasis added). The MIGA Act includes a so-called "exhaustion" provision that requires claimants to exhaust claims against solvent insurers before seeking reimbursement against MIGA acting on behalf of an insolvent insurer in cases involving duplicative insurance coverage:

> Any person having a claim against an insurer under any provision in an insurance policy, other than that of an insolvent insurer, which is also a covered claim, shall be required to exhaust first the person's right under the policy. Any amount otherwise payable on a covered claim under this subchapter shall be reduced by the amount of any recovery under the insurance policy.

24-A M.R.S.A. § 4443(1) (2000). In order to effectuate its statutory purpose, the MIGA Act is to be liberally construed. "This subchapter shall be liberally construed to effect the purpose stated under section 4432, which shall constitute an aid and guide to interpretation." 24-A M.R.S.A. § 4434 (2000).

[¶ 6] MIGA contends, and the Superior Court agreed, that its potential liability to Hanover or Liberty Mutual is in the nature of subrogation and, therefore, is not a "covered claim" because the definition of "covered claims" excludes "subrogation recoveries or otherwise." We agree. The apportionment statute applicable to the present case provides:

> **1. Applicability.** When 2 or more occupational injuries occur, during either a single employment or successive employments, that combine to produce a single incapacitating condition and more than one insurer is responsible for that condition, liability is governed by this section.
>
> **2. Liability to employee.** If an employee has sustained more than one injury while employed by different employers, or if an employee has sustained more than one injury while employed by the same employer and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, *the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act.*
>
> **3. Subrogation.** *Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable.* Any such insurer may, in accordance with rules adopted by the Superintendent of Insurance, file a request for an apportionment of an arbitrator to determine apportionment of liability among the responsible insurers. The arbitrator's decision is limited to a choice between the submissions of the parties and may not be calculated by averaging. Within 30 days of the request, the Superintendent of Insurance shall appoint a neutral arbitrator who shall decide, in accordance with the rules adopted by the Superintendent of Insurance, respective liability among or between insurers. Arbitration pursuant to this subsection is the exclusive means for resolving apportionment disputes among insurers and the decision of the arbitrator is conclusive and binding among all parties involved. Apportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act.
>
> **4. Consolidation.** The board may consolidate some or all proceedings arising out of multiple injuries.

39-A M.R.S.A. § 354 (Supp.1998) (emphasis added), *amended by* P.L.1999, ch. 354, § 9.

[¶ 7] As we have stated:

[T]he historical underpinning of apportionment is subrogation. *See e.g., Lamonica v. Ladd Holmes,* 1998 ME 190, ¶ 5, 718 A.2d 182, 183–84 (employer unable to apportion against subsequent insurer when employer's claim against subsequent insurer was extinguished by employee's failure to provide timely notice of injury); *Kennedy v. Brunswick Convalescent Ctr.,* 584 A.2d 678, 680 (Me.1991) (employer unable to apportion after employee settled claim against other employer). *See generally, Johnson v. S.D. Warren, Div. of Scott Paper Co.,* 432 A.2d 431, 435–36 (Me.1981). The principle of subrogation is supported by the plain language of subsection 354(3) providing that: "[a]ny insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act . . . ." 39–A M.R.S.A. § 354(3).

*Dorr v. Bridge Constr. Corp.,* 2000 ME 93, ¶ 7, 750 A.2d 597, 600; *see also Lamonica,* 1998 ME 190, ¶ 5, 718 A.2d at 183–84; *Kennedy,* 584 A.2d at 680; *Johnson,* 432 A.2d at 435–36.

[¶ 8] Title 24–A M.R.S.A. section 4435(4) was originally enacted in 1969, P.L.1969, ch. 561, and has been amended several times, most recently in 1995, *see, e.g.,* P.L. 1995, ch. 289, § 12. We presume that the Legislature has continued to use the word "subrogation" in 24–A M.R.S.A. § 4435(4) with an awareness of our long and consistent treatment of apportionment in the workers' compensation context as involving a right of subrogation.[2] The Superior Court's thoughtful decision is consistent with the plain language of both title 24–A and section 354, and also with the legislative purpose of the MIGA Act. As we have stated:

> [The MIGA] *provisions make MIGA a guarantor of last resort.* Even when an insolvent insurer's policy would have provided primary insurance for a claim, the effect of the insolvency is to render that insurance excess coverage. By the "exhaustion" requirement of the first sentence of section 4443(1), a claimant must first look beyond MIGA for insurance coverage. By the second sentence of that same section, MIGA's obligation to the claimant is reduced by whatever amount the claimant recovers from any other insurance sources. By this offset provision, appearing in a section appropriately entitled "Nonduplication of recovery," the legislature has specifically modified the usual collateral source rule so far as MIGA and other available insurance are concerned. The claimant may not recover twice for the same injuries. Also, the last sentence of the definition of "covered claim" in section 4435(4) makes clear that *no insurer may recover from MIGA by way of subrogation or otherwise. Thus, the legislature has opted to protect MIGA and its guaranty fund from all but last resort claims against insolvent insurers, and to let other insurers bear the losses for which they can underwrite and charge appropriate premiums.*

*Ventulett v. Maine Ins. Guar. Assoc.,* 583 A.2d 1022, 1023–24 (Me.1990) (emphasis added). By excluding MIGA from an apportionment liability until the employee has exhausted his claims against the solvent insurers, the Superior Court has ef-

---

2. Moreover, subsection 4435(4) excludes not merely subrogation recoveries from the definition of "covered claims," but "subrogation recoveries *or otherwise.*" 24–A M.R.S.A. § 4435(4) (emphasis added). This broad language, coupled with the policy of the statute to interpret the language liberally, further strengthens MIGA's contention that a workers' compensation apportionment against an insolvent insurer is excluded from the definition of a "covered claim."

fectuated the purpose of the Act by making MIGA the guarantor of last resort.

[¶ 9] The insurers concede that they are subrogated to the rights of the employee with respect to the apportionment of benefits that have already accrued, but contend that they are not limited to subrogation with respect to benefits accruing in the future. The insurers rely on language in subsection 354(2) of title 39–A, providing that "the insurer providing coverage at the time of the last injury shall *initially* be responsible to the employee for all benefits payable under this Act." 39–A M.R.S.A. § 354(2) (Supp.1998), *amended by* P.L. 1999, ch. 354, § 9 (emphasis added). The insurers contend that the word "initially" limits the liability of the most recent insurer to benefits already paid. We disagree. The word "initially," as used in subsection 354(2), is not synonymous with "past" or "retrospective." The purpose of subsection 354(2) is to ensure that employees receive prompt payment of full benefits without diminution or delay as a result of apportionment disputes between insurers. The clear intent of this language is that the most recent insurer is solely liable for both *past and future benefits,* unless and until that time that the insurer obtains an apportionment against other responsible insurers.

[¶ 10] The insurers also rely on the phrase "has paid" in the first sentence of subsection 354(3), providing: "Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable." 39–A M.R.S.A. § 354(3) (Supp.1998), *amended by* P.L.1999, ch. 354, § 9 (emphasis added). The insurers contend that the phrase "has paid" limits subrogation to payments made of the past and not to future liability. This argument is equally unavailing. None of

our workers' compensation opinions discussing apportionment and subrogation make any distinction between past and future liability for workers' compensation benefits. Workers' compensation awards typically involve both prospective and retroactive entitlement to benefits. To limit the principle of subrogation to payment obligations that have already accrued and to hold it inapplicable to liability for future benefits would substantially change the subrogation principle and add needless complexity to the determination of the insurers' respective rights in apportionment proceedings.

[¶ 11] The insurers contend further that the construction given by the Superior Court to the Act creating MIGA will have detrimental effects on the employee and is contrary to the purpose of MIGA and the apportionment statute. The insurers contend that, in the present case, Folsom will suffer a delay in his receipt of benefits if MIGA is excluded from apportionment. Hanover asserts: "If MIGA succeeds in its position, ... Mr. Folsom may be enmeshed in further litigation, and some of his workers' compensation benefits may be delayed while insurers battle over apportionment." We are unpersuaded by that contention. As discussed above, the purpose of subsection 354(2) is to ensure that employees do not suffer loss, reduction, or delay of benefits as a result of apportionment disputes. Subsection 354(3) also plainly states that "[a]pportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act." 39–A M.R.S.A. § 354(3) (Supp.1998), *amended by* P.L.1999, ch. 354, § 9. These provisions make clear that, in multiple injury cases, the most recent insurer must promptly pay *all* benefits owed to the injured employee, and then must follow the provisions of subsection 354(3) to obtain a reimbursement from other insurers. Apportionment does not affect the

employee's entitlement to benefits or the timing of their receipt of those benefits.

[¶ 12] Finally, the insurers contend that if MIGA is not obligated to pay its proportional share of liability, Folsom will suffer a loss of benefits because neither Hanover nor Liberty will be required to pay benefits pursuant to the provisions of the 1983 law, which, they assert, is more beneficial to the employee. We disagree. Because the proceeding in the present case was pending on the effective date of 39–A M.R.S.A. § 201(6), liability is controlled by our decision in *Ray v. Carland Constr., Inc.,* 1997 ME 206, 703 A.2d 648. Pursuant to *Ray,* liability in a multi-injury case is governed by the law at the time of the most recent injury.[3] *Ray,* 1997 ME 206, ¶ 6, 703 A.2d 648, 650–51. Accordingly, Folsom's benefits will be governed by the 1992 injury and pursuant to the law in effect at that time, Folsom is not entitled to the more liberal benefit provision of the 1983 law. This result does not derive from the apportionment statute, however, but from the applicable law pertaining to multiple injuries.

[¶ 13] Moreover, even if subsection 201(6) did apply, it would not lead to the result suggested by the insurers. Subsection 201(6) obligates the Hearing Officer to apportion liability between multiple work-injuries in order to determine the level of the employee's benefits. 39–A M.R.S.A. § 201(6). The responsibility of the Hearing Officer to determine an employee's entitlement to benefits pursuant to subsection 201(6) is independent of the responsibility of an arbitrator or a Hearing Officer to apportion liability between insurers in an arbitration proceeding.[4] Unless and until there is an apportionment of liability between insurers, the most recent insurer is obligated to pay all benefits awarded by the Hearing Officer, regardless of how those benefits are calculated pursuant to subsection 201(6). Apportionment pursuant to section 354 cannot affect the level of an employee's benefits, nor can it control the applicable statute for determining those benefits.

The entry is:

Judgment affirmed.

---

**3.** Subsection 201(6) requires an apportionment of liability between dates of injury and the application of the law at the time of each date of injury to determine the amount of benefits. *See* P.L.1998, ch. 647 (effective June 30, 1998). We have held that subsection 201(6) does not apply to proceedings pending on its effective date. *See Loud v. Kezar Falls Woolen Co.,* 1999 ME 118, ¶ 11, 735 A.2d 965, 969.

**4.** Subsection 354(3), as recently amended, currently provides authority to the Hearing Officer to apportion liability between insurers. P.L.1999, ch. 359, § 9 (codified at 39–A M.R.S.A. § 354 (2000)).