2001 ME 148

**Goldie EDWARDS**

v.

**TRAVELERS INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Argued: Sept. 10, 2001.
Decided: Oct. 26, 2001.

Charles E. March (orally), Reben, Benjamin and March, Portland, for employee.

James E. Fortin (orally), Deborah Buccina, Douglas, Denham, Buccina & Ernst, Portland, for employer.

Panel: WATHEN, C.J.,* and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

ALEXANDER, J.

[¶ 1] Travelers Insurance Co., a workers' compensation insurer for Crest Shoe Co., appeals from a decision of a hearing officer of the Workers' Compensation Board awarding Goldie Edwards total incapacity benefits, but permitting an offset of $7.48 per week, as a result of Edwards's lump sum settlement with another insurer for a subsequent injury. Travelers contends that it is entitled to continue paying 50% partial incapacity benefits pursuant to an arbitrator's apportionment decision. We vacate the hearing officer's decision and remand for determination of the appropriate level of benefits.

## I. CASE HISTORY

[¶ 2] Goldie Edwards worked for Crest Shoe Co. in Lewiston from 1986 until Crest Shoe ceased operations in April 1992. In August 1991, Edwards reported a repetitive motion injury to her left wrist and arm caused by her job cutting heels. After a brief absence from work following the August injury report, Edwards returned to Crest Shoe, working in a light duty position and receiving partial compensation benefits until Crest Shoe ceased operations in April 1992. While employed at Crest Shoe, Edwards's average weekly wage, not contested in these proceedings, was $291.64. In September 1992, Edwards signed a voluntary discontinuance of benefits for the reason that she had resumed work.

[¶ 3] Edwards then worked in several different jobs not related to this action. In March 1993, Edwards began employment in an inspection and stitching position with American Pride in Lewiston, which is insured for workers' compensation purposes by Maine Employers Mutual Insurance Company (MEMIC). At American Pride, Edwards reported a repetitive motion injury to her right wrist in January 1994. Prior to this report of injury, Edwards's average weekly wage at American Pride was $228.50, also not contested in these proceedings.

[¶ 4] After her injury report, Edwards ceased working and MEMIC voluntarily commenced payment of total incapacity benefits. Edwards then filed a petition for restoration of benefits from Crest Shoe/Travelers, and MEMIC sought apportionment against Travelers for contribution to MEMIC's total incapacity payments. Apportionment was requested through arbitration as authorized by 39–A M.R.S.A. § 354 (Supp.1998), *amended by* P.L. 1999, ch. 354, § 9.

[¶ 5] Pursuant to the then applicable apportionment statute, 39–A M.R.S.A. § 354 (Supp.1998), *amended by* P.L. 1999, ch. 354, § 9, the arbitrator's decision was limited to a choice between the submissions of the parties.[1] The arbitrator

---

1. The applicable apportionment statute, section 354, provides:

> 1. **Applicability.** When 2 or more occupational injuries occur, during either a single employment or successive employments, that combine to produce a single incapacitating condition and more than one insurer is responsible for that condition, liability is governed by this section.
> 2. *Liability to employee.* If an employee has sustained more than one injury while employed by different employers, or if an employee has sustained more than one injury while employed by the same employer and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act.
> 3. **Subrogation.** Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's

adopted the $^{50}\!/_{00}$ apportionment urged by Edwards and MEMIC, rejecting the $^{40}\!/_{00}$ apportionment urged by Travelers. Following the arbitration decision, Travelers assumed responsibility to reimburse MEMIC for 50% of the incapacity benefits paid to Edwards beginning January 13, 1994.

[¶ 6] On April 7, 1998, Edwards and MEMIC agreed to, and a hearing officer approved, a lump sum settlement of $95,000 for Edwards's injury described as: "tendonitis-left upper extremity."[2] The settlement agreement also provided that: "Travelers will continue to pay based on current rate pending alteration by decree or rule ...." The $95,000 settlement was allocated as follows:

(1) $54,000 for medical, psychiatric, and physical therapy expenses based on an estimated expense of $1,200 per year, for an estimated life expectancy of 45 years;[3]

(2) $15,000 for vocational rehabilitation, although Edwards's position was that vocational rehabilitation services would be of no use;

(3) $17,512.26 for wage replacement incapacity benefits which, according to the agreement, were based on projected payments of only $32.43 per month for Edwards's life expectancy of 45 years; and

(4) $8,487.74 for attorney fees and costs.

[¶ 7] Counsel for Travelers contends that she participated in the settlement discussion by telephone and that she agreed that Travelers would continue payment of 50% benefits. However, Travelers contends that it did not consent to the minimal amount attributed to future incapacity payments.

[¶ 8] In the fall of 1998, Edwards petitioned for restoration, payment of psychological counseling expenses, and to determine the extent of permanent impairment against Travelers. After hearings, the hearing officer of the Workers' Compensation Board issued a decision that:

---

rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Any such insurer may, in accordance with rules adopted by the Superintendent of Insurance, file a request for appointment of an arbitrator to determine apportionment of liability among the responsible insurers. The arbitrator's decision is limited to a choice between the submissions of the parties and may not be calculated by averaging. Within 30 days of the request, the Superintendent of Insurance shall appoint a neutral arbitrator who shall decide, in accordance with the rules adopted by the Superintendent of Insurance, respective liability among or between insurers. Arbitration pursuant to this subsection is the exclusive means for resolving apportionment disputes among insurers and the decision of the arbitrator is conclusive and binding among all parties involved. Apportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act.

4. **Consolidation.** The board may consolidate some or all proceedings arising out of multiple injuries.
39–A M.R.S.A. § 354 (Supp.1998), *amended by* P.L. 1999, ch. 354, § 9. 39–A M.R.S.A. § 354 (Supp.1998), *amended by* P.L. 1999, ch. 354, § 9. Former section 354 has been amended to give authority to hearing officers to determine apportionment issues. *See* P.L. 1999, ch. 354, § 9 (codified as amended 39–A M.R.S.A. § 354 (2001)); *Livingstone v. A–R Cable Servs. of Maine*, 2000 ME 18, ¶ 1 n. 1, 746 A.2d 901, 902 n. 1. Neither party contends that the amended section 354 applies to the present appeal.

2. The "left" reference may be a clerical error, as MEMIC had been paying based on a right wrist injury.

3. This sum included no present value reduction and constituted an award which, invested at only a 5% rate of return, would annually produce more than double the projected annual future medical expenses.

(1) granted Edwards's petition for restoration and awarded continuing benefits for total incapacity and permanent impairment. *See* 39 M.R.S.A. § 54–B (Supp.1991), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 214 (2001)); 39 M.R.S.A. § 56–B (Supp.1991), *repealed by* P.L.1991, ch. 885, § A–7;

(2) determined that Travelers was responsible for medical payments for psychological counseling and other treatments (mostly psychological counseling) received since the settlement with MEMIC "to the extent permitted by the Board's fee schedule." The hearing officer's decision gave no consideration to any set-off from the $54,000 for future medical-related expenses which Edwards had received in April 1998; and

(3) required Travelers to pay total incapacity benefits based on Edwards's average weekly wage of $291.64, with a set-off of only $7.48 per week based on the 1998 lump sum settlement. In reaching this result, the hearing officer rejected Travelers's position that it should be responsible for only 50% of total incapacity benefits based on the 1995 arbitration order. In doing so, the hearing officer concluded that, as a result of the settlement, Travelers remained the only "responsible" party to pay for incapacity benefits and, thus, was obligated to pay 100% of the benefit requirement, subject to the small set-off amount.[4]

[¶ 9] At Travelers's request, the hearing officer then made further findings which did not alter the decision. Travelers then filed a timely petition for appellate review which we granted pursuant to 39–A M.R.S.A. § 322 (2001).

## II. DISCUSSION

[¶ 10] We have long disfavored interpretations of the Workers' Compensation Act which result in duplicate recoveries of benefits for particular injuries. *See LaPointe v. United Eng'rs & Constructors,* 680 A.2d 458, 460–61 (Me.1996); *Webber v. Bath Iron Works Corp.,* 656 A.2d 748, 749 (Me. 1995); *Parker v. Bath Iron Works Corp.,* 644 A.2d 1037, 1039–40 (Me.1994); *Bouford v. Bath Iron Works Corp.,* 514 A.2d 470, 474 (Me.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 1000 (1987); *Stockford v. Bath Iron Works Corp.,* 482 A.2d 843, 845 (Me.1984); *Bourque v. Frank X. Pomerleau, Inc.,* 472 A.2d 933, 936 (Me.1984).

[¶ 11] In this case, the potential for duplicate recoveries results from the hearing officer's erroneous determination that the lump sum settlement left Travelers as the only "responsible party" for Edwards's injuries. While agreeing that Travelers is entitled to an offset to prevent a double recovery, Edwards contends that the hearing officer correctly limited Travelers's offset to the minimal amount allocated to lost wages in the settlement.

[¶ 12] Edwards relies primarily on *Kennedy v. Brunswick Convalescent Ctr.,* 584 A.2d 678, 680–81 (Me.1991). In *Kennedy,* the employee suffered two work-related injuries while her employer was insured by two different insurers. *Id.* at 679. The second insurer paid benefits to the employee and subsequently filed a petition for apportionment against the previous insurer. *Id.* On the eve of a decision on the petition for apportionment, the employee settled her claims separately with both insurers. *Id.* at 679–80. The hearing

---

**4.** The hearing officer apparently relied on section 354(1), providing that the apportionment provisions apply when "more than one insurer is responsible for" an employee's work-related incapacity. 39–A M.R.S.A. § 354(1) (2001).

commissioner subsequently granted the petition for apportionment and ordered the first insurer to reimburse the second insurer for 70% of benefits previously paid to the employee. *Id.* at 680. We vacated the Commissioner's decision, stating that, because an employer's right to an apportionment is limited to subrogation, and because the employee's rights against the first insurer were extinguished by the settlement, the subsequent insurer had no right of apportionment against the previous insurer. *Id.* at 680–81.[5]

[¶ 13] As we have stated, the legislative policy of apportionment and subrogation is: (1) to reduce the benefit obligation of the employer; (2) to prevent a double recovery of benefits; (3) to encourage the prompt payment of benefits by the promise of a later recovery against a second insurer; and (4) to ensure that the employee receives the appropriate level of compensation from some source. *See Robbins v. Bates Fabrics, Inc.,* 412 A.2d 374, 378–79 (Me.1980).

[¶ 14] In *Kennedy,* the employee settled with both insurers simultaneously and had already received all the benefits she was entitled to receive. *Kennedy,* 584 A.2d at 680–81. In *Kennedy,* therefore, unlike the present case, there was no danger of a double recovery.

[¶ 15] The present case is more analogous to *Bourque,* 472 A.2d at 936. In *Bourque,* the employee suffered two injuries while employed by the same employer: a back-injury while working as a laborer in 1974 and an anxiety-related injury working

as a dispatcher in 1978. *Id.* at 934–35. The employee lump-sum settled the subsequent injury and then filed a petition for further compensation related to the first injury. *Id.* The former Workers' Compensation Commission denied the employee's petition, concluding that the settlement precluded recovery for the 1974 back-injury. *Id.* at 935.

[¶ 16] Agreeing that the employee was not entitled to a double recovery, we vacated the Commissioner's decision, stating, in part, that the employee's claim for the 1974 injury only "remain[s] valid to the extent it *exceeds* the potential claims commuted [sic] by the lump sum settlement of the 1977 anxiety-related injury." *Id.* at 936 (emphasis in original). In effect, we determined that the nonsettling insurer was only responsible for that portion of the incapacity claim which exceeded the claims resolved by the lump sum settlement of the anxiety-related injury, thus preventing the employee from receiving a double recovery.

[¶ 17] Pursuant to the hearing officer's decision in this case, Travelers is allocated responsibility for 100% of future medical payments and roughly 95% of incapacity compensation payments.[6] Thus, the effect of the hearing officer's decision is to dramatically alter the prior arbitration decision to the prejudice of Travelers.

[¶ 18] The remaining question is whether the parties are bound by the $\frac{50}{50}$ apportionment determined by the arbitrator. We have stated that an arbitration decision pursuant to former section 354

---

5. *Kennedy* involved a construction of former 39 M.R.S.A. § 104–B(1)(1987), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8 (codified at 39–A M.R.S.A. § 354).

6. The exact amount of incapacity compensation payments required to be paid after the set-off as a result of the hearing officer's decision is not indicated in the record. For 1991 injuries, disability payments were two-thirds of the employee's average weekly wage, subject to a maximum not at issue here. *See* 39 M.R.S.A. §§ 53–B, 55–B (Supp.1991), *repealed and replaced by* P.L.1991, ch. 885, §§ A–7, A–8.

between two or more insurers, and not involving the employee, cannot affect an employee's entitlement to benefits. *See Maine Ins. Guar. Assoc. v. Folsom,* 2001 ME 63, ¶ 13, 769 A.2d 185, 191. Here, Edwards actively participated in and testified at the arbitration hearing, the hearing was conducted at the employee's attorney's office, and Edwards asserted the ⁵⁰⁄₀ apportionment of responsibility for compensation payments that the arbitrator ordered. Moreover, the lump sum settlement order itself recognized that Travelers would continue paying 50% of the benefits pursuant to the arbitration agreement. We conclude that this level of participation in the arbitration, and the acknowledgment in the settlement documents recognizing Travelers's continuing 50% liability, precludes the employee from asserting that she should not be bound by the ⁵⁰⁄₀ apportionment determined by the arbitrator.

[¶ 19] Under these facts, we conclude that the unilateral lump sum settlement agreement between the employee and MEMIC could not alter the apportionment order resulting from a proceeding in which the employee had actively participated. With such a settlement, the settling employee accepts the apportionment order as the basis for the nonsettling insurer's future responsibility for her injuries.[7]

[¶ 20] There is no dispute that Edwards's average weekly wage for purposes of continuing benefits is $291.64. Pursuant to the arbitration order and the settlement agreement, Travelers is responsible for a 50% share of benefit payments, which should be calculated based upon the $291.64 average weekly wage. Travelers should also remain responsible for 50% of medical payments attributable to the injuries related to Edwards's work at Crest Shoe or American Pride.

The entry is:

Decision of the hearing officer vacated. Remanded to the hearing officer to determine Travelers's responsibility for incapacity payments based upon 50% of the employee's $291.64 average weekly wage and medical payments for medical and related services attributable to the injuries at Crest Shoe or American Pride consistent with this opinion.

---

7. To hold otherwise would permit one insurer, by settling with the employee, to unilaterally change an apportionment order governed by former 39-A M.R.S.A. § 354, which we have held to be the exclusive means of resolving apportionment disputes among insurers for the cases governed by section 354. *Rosetti v. Land Reclamation,* 1997 ME 197, ¶¶ 6–7, 704 A.2d 312, 314–15.