2002 ME 173

**Mary RICCI**

v.

**MERCY HOSPITAL.**

Supreme Judicial Court of Maine.

Argued:  Oct. 10, 2002.

Decided:  Dec. 13, 2002.

Kevin L. Noonan, Esq. (orally), McTeague, Higbee, Case, Whitney & Toker, P.A., Topsham, ME, for employee.

Dale L. Gavin, Esq. (orally), Piampiano & Gavin, South Portland, ME, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1]   Mercy Hospital appeals from a decision of a hearing officer of the Workers' Compensation Board granting Mary Ricci's petition to increase her weekly benefit payment.  Prior to the decision, the employee had been receiving benefits based on a determination of her pre-injury average weekly wage without the inclusion of fringe benefits because such inclusion of fringe benefits would have resulted in a benefit level in excess of two-thirds the

state average weekly wage at the time of her injury. *See* 39–A M.R.S.A. § 102(4)(H) (2001). In response to Ricci's petition, the hearing officer concluded that fringe benefits could be included in the employee's pre-injury wage because Mercy Hospital had recently taken an offset for 50% of the employee's social security benefits, *see* 39–A M.R.S.A. § 221(3)(A)(1) (2001), which reduced her benefit level to below two-thirds the state average weekly wage at the time of her injury. We disagree and vacate the decision.

## I. BACKGROUND

[¶ 2] The record reflects the following undisputed facts. Mary Ricci suffered a work-related injury in 1993 while employed by Mercy Hospital. Ricci's average weekly wage at the time of her injury was $492.61, with additional fringe benefits valued at $49.20 a week.

[¶ 3] Title 39–A M.R.S.A. § 102(4)(H) permits the inclusion of fringe benefits in the average weekly wage to the extent that the inclusion of fringe benefits does not result in a benefit level in excess of two-thirds the state average weekly wage at the time of the injury. Because Ricci's benefit rate of $300.92, without the inclusion of fringe benefits, exceeded two-thirds the state average weekly wage at the time of her injury,[1] there was no inclusion of fringe benefits in Ricci's average weekly wage.

[¶ 4] After receiving workers' compensation benefits for a period of time, Ricci became eligible for and began receiving social security old-age benefits. Section 221 permits the employer to offset its obligation to pay benefits by 50% of an employee's social security old-age benefits. Title 39 M.R.S.A. § 221(3)(A)(1). Shortly after Ricci began receiving social security

old-age benefits, Mercy Hospital reduced the workers' compensation benefits by $91 per week in accordance with 39–A M.R.S.A. § 221.

[¶ 5] Subsequently, Ricci filed a petition to increase her benefits. The hearing officer granted the employee's petition, concluding that, in light of the set-off of social security old-age benefits, her worker's compensation benefit rate was now less than two-thirds the state average weekly wage at the time of her injury, and, therefore, she is entitled to the inclusion of fringe benefits in her average weekly wage.

[¶ 6] We granted Mercy Hospital's petition for appellate review of the hearing officer's decision pursuant to 39–A M.R.S.A. § 322 (2001).

## II. DISCUSSION

Title 39–A M.R.S.A. § 102(4)(H) provides:

**H.** "Average weekly wages, earnings or salary" does not include any fringe or other benefits paid by the employer that continue during the disability. Any fringe or other benefit paid by the employer that does not continue during the disability must be included for purposes of determining an employee's average weekly wage *to the extent that* the inclusion of the fringe or other benefit will not result in a weekly benefit amount that is greater than ⅔ of the state average weekly wage at the time of injury.

39–A M.R.S.A. § 102(4)(H) (emphasis added).

[¶ 7] We have interpreted the words "to the extent that" in subsection H to require a "sliding scale" approach to the inclusion of fringe benefits; fringe benefits are added to an employee's average week-

---

1. Two-thirds the state average weekly wage at the time of Ricci's injury is $274.02.

ly wage only to the extent that their inclusion will bring the employee's "benefit amount" up to the threshold of two-thirds the state average weekly wage at the time of the injury. *See Coulombe v. Anthem Blue Cross/Blue Shield of Maine, Inc.,* 2002 ME 163, ¶ 11, 809 A.2d 613; *Hincks v. Robert Mitchell Co.,* 1999 ME 172, ¶ 6, 740 A.2d 992, 994; *O'Neal v. City of Augusta,* 1998 ME 48, ¶¶ 4–6, 706 A.2d 1042, 1043–44.

■ [¶ 8] Coordination of benefits is governed by 39–A M.R.S.A. § 221, which provides, in pertinent part:

**3. Coordination of benefits.** Benefit payments subject to this section must be reduced in accordance with the following provisions.

**A.** The employer's obligation to pay or cause to be paid weekly benefits other than benefits under section 212, subsection 2 or 3 is reduced by the following amounts:

(1) Fifty percent of the amount of the old-age insurance benefits received or being received under the United States Social Security Act. For injuries occurring on or after October 1, 1995, such a reduction may not be made if the old-age insurance benefits had started prior to the date of injury or if the benefits are spouse's benefits;

. . . .

39–A M.R.S.A. § 221(3) (2001). The plain language of section 221(3)(A) provides that an employer's "benefit obligation" is "reduced" by various offsets, including the offset for old-age insurance benefits enumerated in subparagraph 1. 39–A M.R.S.A. § 221(3)(A) (2001). Pursuant to the plain language, that "reduction" or coordination of benefits cannot be undertaken until after the amount of the employer's benefit obligation has been determined.

[¶ 9] We interpret the words "benefit payments" in section 221(3)(A) to be substantially similar to the phrase "benefit amount" in section 102(4)(H). Section 102(4)(H) provides a method of determining the final amount of an employee's benefits. Once the employer's obligation to pay benefits is determined pursuant to section 102 and other applicable provisions, *see, e.g.,* 39–A M.R.S.A. §§ 212–14 (2001 & Supp.2001), those benefits may be reduced or coordinated with retirement and other types of employee benefits pursuant to section 221.

[¶ 10] Our construction of the statutes is consistent with the legislative purpose of the statutes. We have recognized a legislative purpose to permit the inclusion of fringe benefits in an employee's pre-injury wage in cases when the employee is receiving very low benefits, i.e., less than two-thirds the state average weekly wage at the time of the injury. *See Ciampi v. Hannaford Bros. Co.,* 681 A.2d 4, 9 (Me. 1996). Several purposes for coordination of benefits in the workers' compensation setting have been recognized:

(1) "to reduce insurance premiums and prevent carriers from withdrawing business from the state," *Jordan v. Sears, Roebuck & Co.,* 651 A.2d at 358, 360–61 (Me.1994); (2) "to ensure a minimum income during the period of an employee's incapacity," *id.;* (3) to "prevent a double recovery of both retirement and compensation benefits," *id.;* (4) "to prevent the stacking of benefits," *Berry v. H.R. Beal & Sons,* 649 A.2d 1101, 1103 (Me.1994) (citations omitted); and (5) "to alleviate the burden on employers who are required to pay into the workers' compensation and social security systems." *id.*

*Berube v. Rust Eng'g,* 668 A.2d 875, 878 (Me.1995) (Rudman, J., dissenting).

[¶ 11] In the present case, the hearing officer's interpretation of the statute increased the employee's benefit payment, which after her receipt of social security old-age benefits and her employer's coordination of her benefits had fallen below two-thirds the state average weekly wage at the time of her injury. By increasing that payment, however, the hearing officer, in effect, reduced the amount of the employer's offset. While the Legislature clearly intended the consideration of fringe benefits for individuals with very low weekly benefits, we see no evidence of a legislative intent to permit the stacking of workers' compensation benefits with other types of wage loss benefits subject to coordination in section 221(3), even in the case of employees with low weekly benefits. Accordingly, the language of sections 102(4)(H) and 221(3)(A) demonstrates that the Legislature intended to permit the inclusion of fringe benefits to a limited extent in determining the benefit for employees with the lowest weekly benefits but require a coordination of those benefits in cases when the employee is receiving old-age or other benefits subject to coordination pursuant to section 221.

The entry is:

The decision of the hearing officer of the Workers' Compensation Board is vacated. Remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.