2007 ME 9

**Frank JULIANO**

v.

**AMERI–CANA TRANSPORT et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 12, 2006.
Decided: Jan. 11, 2007.

James E. Fortin, Esq. (orally), Douglas Denham Buccina & Ernst, Portland, (for Maine Insurance Guaranty Associates), for appellant.

James J. MacAdam, Esq., Naha A. Jury, Esq. (orally), MacAdam Law Offices. P.A., (for Frank Juliano), Thomas R. Kelly (orally), Robinson Kriger & McCallum, Portland, (for Employers Insurance of Wausau), for appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

LEVY, J.

[¶ 1] This workers' compensation case concerns the apportionment of liability between insurers when an employee has suffered multiple injuries and one of the responsible insurers is insolvent. The Maine Insurance Guaranty Association (MIGA), which stepped in for the insolvent insurer, appeals from a decision of the Workers' Compensation Board (*Stovall, HO* ) determining that, although MIGA is not responsible for reimbursing the most recent insurer for the portion of the workers' compensation benefit attributable to an earlier injury covered by the insolvent insurer, it must pay the inflation adjustments related to that portion of the award. Because we conclude that, pursuant to 24–A M.R.S. §§ 4431–4452 (2005), MIGA is not required to reimburse any portion of the benefit, including the inflation adjustments, we vacate the hearing officer's decision.

## I. BACKGROUND

[¶ 2] Frank Juliano worked as a truck driver and mechanic for Ameri–Cana Transport for many years. He sustained

work injuries to his lower back in 1981, his right knee in 1986, and his cervical spine in 1988. American Mutual Insurance Company, the insurer on the 1981 injury, is insolvent; therefore, MIGA is obligated for that injury pursuant to 24–A M.R.S. §§ 4431–4452. Wausau Insurance Company provides coverage for the 1986 and 1988 injuries.

[¶ 3] Juliano filed a petition for restoration of benefits related to the 1981 date of injury, and a petition for payment of medical and related services for the 1981 and 1988 dates of injury. Wausau, which had been paying partial incapacity benefits pursuant to a prior decree, filed a petition for review. The hearing officer determined that Juliano is entitled to total incapacity benefits from January 1, 2000, forward, and that each of the three injuries contributed equally to Juliano's incapacity.[1] As the insurer on the most recent injury, Wausau was ordered to pay total incapacity benefits to Juliano, see 39–A M.R.S. § 354(2) (2005), but MIGA was ordered to reimburse Wausau for one-third of those benefits. The hearing officer also awarded inflation adjustments for the injuries pursuant to the statutes in effect at the time of the respective injuries.

[¶ 4] MIGA filed a request for additional findings of fact and conclusions of law. In an amended decree, the hearing officer determined that MIGA is not obligated to reimburse Wausau for one-third of the incapacity benefits because Wausau's claim against MIGA is a subrogation claim, which is not a "covered claim" pursuant to 24–A M.R.S. § 4435(4). The hearing officer also concluded, however, that MIGA is responsible for paying the inflation adjustments related to the 1981 date of injury because they are a direct obligation owed to the employee for which "the protection MIGA has from reimbursing insurers is not applicable," citing *Dunson v. South Portland Housing Authority*, 2003 ME 16, 814 A.2d 972.

[¶ 5] We granted MIGA's petition for appellate review limited to the issue of whether it is obligated to pay the inflation adjustments. See 39–A M.R.S. § 322 (2005). MIGA has been paying the inflation adjustments in compliance with the hearing officer's decree pending this appeal.

## II. DISCUSSION

■ [¶ 6] Pursuant to the Workers' Compensation Act, Juliano's entitlement to benefits for his multiple injuries is governed by the law in effect at the time of each injury. 39–A M.R.S. § 201(6) (2005).[2] The law in effect at the time of the 1981 and 1986 injuries provided for annual inflation adjustments for total incapacity benefits, see 39 M.R.S.A. § 54 (1978);[3] 39

---

1. We vacated a previous decree entered in 2003 (*Johnson, HO*) and remanded the case for a determination of Juliano's entitlement to total incapacity benefits and inflation adjustments. *Juliano v. Ameri–Cana Transport*, No. WCB–03–709 (Jan. 23, 2004). The present appeal is from the decision after remand.

2. Title 39–A M.R.S. § 201(6) (2005) provides:
   6. Prior work-related injuries. If an employee suffers a work-related injury that aggravates, accelerates or combines with the effects of a work-related injury that occurred prior to January 1, 1993 for which compensation is still payable under the law

in effect on the date of that prior injury, the employee's rights and benefits for the portion of the resulting disability that is attributable to the prior injury must be determined by the law in effect at the time of the prior injury.

3. Title 39 M.R.S.A. § 54 (1978) provided, in relevant part:

   While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to 2/3 his average gross weekly wages, earnings or salary, but not more

M.R.S.A. § 54 (Supp.1986). The law in effect at the time of the 1988 injury provided for inflation adjustments for total incapacity benefits, but only after a three-year waiting period, see 39 M.R.S.A. § 54–B(1) (1989),[4] and capped benefits at $447.92, see 39 M.R.S.A. § 53–B (1989). The hearing officer apportioned responsibility for the total incapacity benefit among the insurers, one-third to each injury.

[¶ 7] It is undisputed that: (1) the benefits Juliano receives as a result of the 1981 injury must be adjusted for inflation pursuant to 39 M.R.S.A. § 54 and 39–A M.R.S. § 201(6); (2) Wausau, as the insurer for the most recent injury, must initially pay the entire benefit to Juliano, see 39–A M.R.S. § 354(2), and seek reimbursement from other carriers; and (3) MIGA cannot be required to reimburse Wausau for the one-third share of the benefits apportioned to the 1981 injury, see 24–A M.R.S. § 4435(4). The question presented is whether, as determined by the hearing officer, MIGA can be required to pay directly to Juliano the inflation adjustments for the portion of the benefits related to the 1981 injury. To answer this question we examine the interface of (A) MIGA's payment obligations under the Maine Insurance Guaranty Association Act, and (B) workers' compensation apportionment principles.

A. MIGA's Payment Obligations Under The Maine Insurance Guaranty Association Act

■ [¶ 8] MIGA is required to pay all covered claims to the extent of its obligations; however, it is also required to "deny all other claims" that are not covered. 24–A M.R.S. § 4438(1)(A), (D). The Act's definition of "covered claims" expressly excludes "any amount due any insurer ... as subrogation recoveries or otherwise." 24–A M.R.S. § 4435(4). In addition, the "nonduplication of recovery" provision of the Act requires a person who has "a claim against an insurer under any provision in an insurance policy, other than that of an insolvent insurer, which is also a covered claim," to first exhaust that person's right under the policy. 24–A M.R.S. § 4443(1).

■ [¶ 9] The provisions of the MIGA Act "make MIGA a guarantor of last resort." *Ventulett v. Me. Ins. Guar. Ass'n*, 583 A.2d 1022, 1023 (Me.1990) (holding that amounts paid to an employee pursuant to the Workers' Compensation Act had to be offset against amounts owed by MIGA for the same injury as a result of a federal tort judgment). We further stated

than the average weekly wage in the State of Maine as computed by the Employment Security Commission; 133 ⅓% of such average weekly wage as of July 1, 1977; 166 ⅔% of such average weekly wage as of July 1, 1979; and 200% of such average weekly wage as of July 1, 1981; nor less than $25 weekly; and such weekly compensation shall be adjusted annually on July 1st so that it continues to bear the same percentage relationship to the average weekly wage in the State of Maine as computed by the Employment Security Commission, as it did at the time of the injury.

4. Title 39 M.R.S.A. § 54–B (1989) provided, in relevant part:

While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compensation equal to 2/3 his average gross weekly wages, earnings or salary, but not more than the maximum benefit under section 53–B, nor less than $25 weekly.

1. Annual adjustment. Beginning on the 3rd anniversary of the injury, weekly compensation under this section shall be adjusted annually. The adjustment shall be equal to the lesser of the actual percentage increase or decrease in the state average weekly wages, as computed by the Bureau of Employment Security, for the previous year or 5%.

in *Ventulett* that by enacting MIGA's provisions, particularly the specific definition of "covered claims" and the exhaustion requirement in the nonduplication of recovery provision, the Legislature "opted to ... let other insurers bear the losses for which they can underwrite and charge appropriate premiums." *Id.* at 1024.

### B. Workers' Compensation Apportionment Principles

[¶ 10] Title 39–A M.R.S. § 354(2) authorizes apportionment of workers' compensation benefits between employers or insurers in multiple injury cases, and provides, "the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act." The "historical underpinning of apportionment" in workers' compensation cases is subrogation. *Dorr v. Bridge Constr. Corp.,* 2000 ME 93, ¶ 7, 750 A.2d 597, 600; *accord Lamonica v. Ladd Holmes,* 1998 ME 190, ¶ 5, 718 A.2d 182, 183–84; *Kennedy v. Brunswick Convalescent Ctr.,* 584 A.2d 678, 680 (Me.1991). This view is supported by the plain language of the Workers' Compensation Act, which provides:

> 3. Subrogation. Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Apportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act. The board has jurisdiction over proceedings to determine the apportion-

ment of liability among responsible insurers.

39–A M.R.S. § 354(3) (2005).

[¶ 11] We considered the relationship between an insurer's right of subrogation established by section 354(3) and the MIGA Act's exclusion of "subrogation recoveries" from covered claims in *Maine Insurance Guaranty Association v. Folsom,* 2001 ME 63, 769 A.2d 185. The employee in *Folsom* had suffered three work-related injuries, the second of which was covered by an insolvent insurer. *Id.* ¶ 2, 769 A.2d at 186. The apportionment statute in effect at the time of the second injury provided that arbitration was the exclusive means for apportioning liability between insurers. *Id.* ¶ 3, 769 A.2d at 186; 39–A M.R.S.A. § 354 (Supp.1998), *amended by* P.L.1999, ch. 354, § 9. The hearing officer concluded that he did not have the authority to apportion liability between insurers, and ordered the insurer covering the most recent injury to pay full benefits. *Folsom,* 2001 ME 63, ¶ 3, 769 A.2d at 186.

[¶ 12] Thereafter, MIGA sought and obtained a declaratory judgment in the Superior Court declaring that it was not liable to reimburse any other insurer for an apportioned share of the employee's workers' compensation benefits. *Id.* ¶ 4, 769 A.2d at 186–87. We affirmed the judgment, reasoning that because MIGA's potential liability to the other insurers pursuant to the apportionment statute was in the nature of subrogation, and the definition of "covered claim" pursuant to the MIGA Act excludes "subrogation recoveries or otherwise," any amount apportioned to MIGA was not a "covered claim," and MIGA had no obligation to reimburse the solvent insurer.[5] *Id.* ¶ 6, 769 A.2d at 188.

---

5. We explained that:

"[T]he legislature has opted to protect MIGA and its guaranty fund from all but last resort claims against insolvent insurers, and to let other insurers bear the losses for which they can underwrite and charge appropriate premiums." ... By excluding MIGA from an apportionment liability until the employee has exhausted his claims against the solvent insurers, the Superior

[¶ 13] The hearing officer in the present case applied *Folsom* and concluded that MIGA is not obligated to reimburse Wausau for the benefits apportioned to the 1981 date of injury. The hearing officer also decided, however, that MIGA is responsible to pay the inflation adjustments related to that injury, reasoning that the inflation increases constitute a direct obligation of MIGA to the employee, rather than rights of the employee to which Wausau is subrogated. The hearing officer concluded that "[a]s to the Employee's entitlement to his inflation adjustment, MIGA is the insurer of last resort," citing *Dunson*, 2003 ME 16, 814 A.2d 972, as authority for the proposition that the inflation increases constitute a direct obligation to the employee.

[¶ 14] In *Dunson*, we held, pursuant to sections 201(6) and 354 of the Act, that in multi-injury cases the most recent employer is required to pay the employee "total incapacity benefits to be calculated according to the applicable total incapacity statutes for each date of injury and, in turn is entitled to reimbursement from the employers responsible for prior injuries, according to their respective obligations to pay under the law at the time of those injuries." *Id.* ¶ 16, 814 A.2d at 979. We emphasized that "[a]ny increase in benefits resulting from the application of the inflation adjustment *must be paid to the employee*." *Id.* (emphasis added).

■ [¶ 15] Our statement in *Dunson* that the inflation adjustment must be paid to the employee was not intended to affect the obligation of the insurer "providing coverage at the time of the last injury" to "initially be responsible to the employee for all benefits payable under this Act."

39–A M.R.S. § 354(2). Rather, it reiterates the proposition that "[a]pportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act." *Id.* § 354(3). That is, an employee may not suffer a decrease in benefits if an earlier insurer's obligation turns out to be less than the apportioned percentage of the total benefit after the appropriate law has been applied. The most recent insurer must fill in the gap even when, as here, the gap comprises the earlier insurer's entire apportioned percentage.

[¶ 16] At first blush, Wausau's argument that it should not be held responsible for paying benefits resulting from an injury that predates its coverage because it did not underwrite for the higher level of benefits required by the law in effect at the time of the injury has merit. In the final analysis, however, Wausau's position cannot prevail because it is contrary to the Legislature's decision to allocate the risk among insurers in multiple injury cases so that the most recent insurer has the exclusive responsibility to pay the employee and is then subrogated to the employee's rights as against any other insurers. As we have previously observed, absent the apportionment statute, the most recent insurer would be "liable for 100% of the compensation due." *Johnson v. S.D. Warren,* 432 A.2d 431, 436 (Me.1981).

[¶ 17] We vacate the judgment because Wausau's obligation to Juliano constitutes the entire benefit, including the portion of the benefit related to the 1981 injury as adjusted for inflation. In ordinary cases, Wausau would be entitled to seek subrogation from other insurers. This is not an ordinary case, however, because MIGA has

---

Court has effectuated the purpose of the Act by making MIGA the guarantor of last resort.

*Me. Ins. Guar. Ass'n v. Folsom,* 2001 ME 63, ¶ 8, 769 A.2d 185, 189–90 (quoting *Ventulett v. Me. Ins. Guar. Assoc.,* 583 A.2d 1022, 1023–24 (Me.1990)) (emphasis omitted).

replaced the insolvent insurer on the 1981 injury and, in accordance with section 4435(4) of the MIGA Act, is not responsible for Wausau's subrogation claim.

[¶ 18] MIGA has been paying the inflation adjustments pursuant to the hearing officer's decree pending this appeal. Because MIGA had no obligation to do so, it is entitled to be reimbursed by Wausau for the amounts it has paid.

The entry is:

Judgment vacated. Remanded for proceedings consistent with this opinion.