2007 ME 64

**Roland TROTTIER**

v.

**THOMAS MESSER BUILDERS et al.**

Supreme Judicial Court of Maine.

Argued: Nov. 28, 2006.
Decided: May 22, 2007.

Brenda T. Piampiano, Esq. (orally), Piampiano Law Offices, Yarmouth, (for OneBeacon Insurance Co.), for appellant.

Dana Gillespie Herzer, Esq. (orally), Law Offices of Frederick C. Moore, Portland, for appellee.

Philip L. Bartlett II, Esq., Scaccia, Lenkowski & Aranson, Sanford, for employee.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.*

SILVER, J.

[¶ 1] This workers' compensation appeal concerns the apportionment of liability for benefits among employers in a multi-injury case in which the employee's current earnings exceed the average weekly wage earned at the time of the first injury. The hearing officer (*Stovall, HO* ) awarded Roland Trottier 100% partial benefits for a closed-end period of time, and ongoing partial benefits. Liability was apportioned between two employers, 80% to Thomas Messer Builders for a 1991 back injury, and 20% to Brady Construction for a 2002 knee injury. Messer contends that it is

---

* Justice Howard H. Dana Jr. sat at oral argument and participated in the initial conference but retired before this opinion was certified.

not liable to reimburse Brady for its apportioned share of the benefits because Trottier's current earning capacity exceeds the average weekly wage he earned at the time of the 1991 injury. We agree, and vacate the decree, remanding the matter to the hearing officer.

## I. BACKGROUND

[¶ 2] Trottier suffered a low-back injury in 1991 while working as a carpenter for Messer. He was able to return to work after a short period, but Messer closed up shop a few months later. He began working for Brady Construction as a carpenter in 1994.

[¶ 3] In 2001, Trottier aggravated his back injury outside of work when he lifted a small boat at his parents' camp. He filed a petition for review of incapacity related to the 1991 back injury. Trottier and Messer entered into a consent decree in which Messer agreed that the periods of incapacity Trottier suffered after the 2001 nonwork injury were "causally related to [Trottier's] work-related back injury of September 12, 1991." Messer paid total and partial incapacity benefits covering a period of seven weeks pursuant to that consent decree.

[¶ 4] On February 28, 2002, Trottier suffered a knee injury while at work for Brady. He underwent surgery and returned to work in July of that year. Shortly thereafter, he injured his back while lifting a sheet of plywood and had to go out of work again. In January of 2003, he returned to work for Brady as an estimator, a position in which he did not have to do any heavy work. Trottier earned a higher wage as an estimator than he did working for Messer as a carpenter.

[¶ 5] As a result of a business slowdown, Brady laid Trottier off on November 19, 2003. He immediately began to look for employment, and started working full time for Lavalley Lumber on January 19, 2004. He collected unemployment benefits between jobs.

[¶ 6] In 2004, Trottier filed petitions for review of incapacity related to the 1991 and 2002 back injuries, and the 2002 knee injury. Brady and its insurer, Peerless Insurance Company, filed a petition for apportionment against Messer and its insurer, OneBeacon Insurance Company. The hearing officer determined that Trottier is entitled to 100% partial incapacity benefits from November 19, 2003, until January 19, 2004, (after he was laid off from Brady and until he went to work for Lavalley), with an offset for unemployment benefits; and ongoing partial incapacity benefits.

[¶ 7] Both employers filed petitions for findings of fact and conclusions of law. In an amended decree, the hearing officer determined that Messer is responsible for 80% of Trottier's incapacity due to the 1991 back injury, and Brady, for 20% due to the February 2002 knee injury. The hearing officer concluded, based on a statement in the 2003 consent decree, that any portion of the incapacity resulting from the 2001 boat-lifting incident was causally related to, and therefore attributable to, the 1991 back injury. The hearing officer further found that the July 2002 back injury, sustained at Brady, had resolved by the time of the hearing.

[¶ 8] The parties agree that Trottier's average weekly wage for the 1991 date of injury was $259.53, and for the 2002 dates of injury was $543.72. At the time of the hearing, he earned $467.36 per week at Lavalley Lumber.

[¶ 9] The hearing officer calculated the partial benefit due Trottier from Brady/Peerless ($44.97) based on the 2002 average weekly wage, and determined that Messer must reimburse Brady 80% of that

amount ($35.98), pursuant to 39–A M.R.S. § 354 (2006).

[¶ 10] With respect to the 100% partial benefit, the hearing officer determined that Brady/Peerless initially must pay Trottier the full benefit based on the 2002 average weekly wage, less unemployment benefits received during the relevant period, but that Messer must reimburse Brady in an amount equal to 80% of the 1991 compensation rate.

[¶ 11] Messer filed a petition for appellate review, which we granted pursuant to 39–A M.R.S. § 322 (2006).

## II. DISCUSSION

### A. Partial Benefit

■ [¶ 12] Messer contends that pursuant to the Workers' Compensation Act, it is not required to reimburse Brady for any portion of the ongoing partial benefit because Trottier's current earnings exceed the average weekly wage he earned at Messer in 1991.

■ [¶ 13] Generally, compensation for partial incapacity is determined by taking a percentage of the difference between the average weekly wage before the injury, and the average weekly wage the employee is capable of earning after the injury. The partial incapacity provision in effect at the time of the 2002 injury provides, in relevant part:

> While the incapacity for work is partial, the employer shall pay the injured employee a weekly compensation equal to 80% of the difference between the injured employee's after-tax average

weekly wage before the personal injury and the after-tax average weekly wage that the injured employee is able to earn after the injury, but not more than the maximum benefit under section 211.

39–A M.R.S. § 213(1) (2006). When determining Trottier's "rights and benefits for the portion of the resulting disability that is attributable to the prior injury" the hearing officer must apply the law in effect at the time of the 1991 injury. 39–A M.R.S. § 201(6) (2006); *accord Dunson v. S. Portland Hous. Auth.*, 2003 ME 16, ¶ 6, 814 A.2d 972, 976. The partial incapacity statute in effect at the time of the 1991 injury provided, in relevant part:

> While the incapacity for work resulting from the injury is partial, the employer shall pay the injured employee a weekly compensation equal to 2/3 the difference, due to the injury, between his average gross weekly wages, earning or salary before the injury and the weekly wages, earnings or salary which he is able to earn after the injury. . . .

39 M.R.S.A. § 55–B (Supp.1989) *repealed by* P.L.1991, ch. 885, § A–7 (effective Jan. 1, 1993).

■ [¶ 14] In a multiple injury case, workers' compensation benefits are calculated based on a single average weekly wage—the average weekly wage that best reflects the employee's uninjured work capacity. *Dunson*, 2003 ME 16, ¶ 11 n. 7, 814 A.2d at 978. The most recent insurer initially pays the entire benefit to the employee, then is subrogated to the employee's rights for any amounts that other employers or insurers are liable to the employee. 39–A M.R.S. § 354.[1] The em-

---

1. Title 39–A M.R.S. § 354 (2006) provides, in relevant part:

    **2. Liability to employee.** If an employee has sustained more than one injury while employed by different employers, or if an employee has sustained more than one inju-

ry while employed by the same employer and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, the insurer providing coverage at the time of the last

ployee's rights as against an earlier employer are determined with reference to the average weekly wage *at the time of the prior injury. Johnson v. S.D. Warren,* 432 A.2d 431, 436 (Me.1981). "While an insurer liable for an injury accepts the risk that an employee may suffer a subsequent injury in future employment, the insurer does not accept the risk of paying benefits for that injury based on a higher average weekly wage." *Dunson,* 2003 ME 16, ¶ 12, 814 A.2d at 978; *accord Johnson,* 432 A.2d at 435–36.

[¶ 15] In this case, the hearing officer determined that Trottier is entitled to ongoing partial incapacity benefits in the amount of $44.97 per week. This represents 80% of the difference between the 2002/Brady after-tax average weekly wage and the after-tax average weekly wage Trottier earns at Lavalley.[2] The hearing officer apportioned liability for Trottier's incapacity 80% to Messer, and 20% to Brady, and determined that Brady is entitled to be reimbursed by Messer for 80% of the partial benefit, or $35.98. We agree with Messer that this constitutes error because the hearing officer did not calculate the portion Messer owes with reference to the 1991 average weekly wage or 1991 law.

[¶ 16] The formula for calculating the portion of the benefit that an earlier insurer must pay is illustrated in *Johnson.* In that case, the employee suffered a low-back injury in 1975, and a second injury in 1978, both while working for S.D. Warren. 432 A.2d at 433. S.D. Warren was insured by Wausau at the time of the first injury, and was self-insured at the time of the second. *Id.* The commissioner apportioned responsibility for the employee's incapacity equally to both injuries, and ordered Wausau to pay 50% of the benefit based on the 1975 average weekly wage, and Warren/self-insured, to pay 50% of the benefit based on the 1977 average weekly wage. *Id.* This resulted in the employee being paid less than the full benefit as calculated pursuant to the 1977 average weekly wage. *Id.* at 434. We vacated the decision, and held that (1) the employee is entitled to the full benefit based on the 1977 average weekly wage; (2) Wausau was obligated to pay its 50% share based on the 1975 average weekly wage; and (3) S.D. Warren/self-insured was obligated to make up the difference. *Id.* at 434–36, 438.

[¶ 17] Brady contends that *Johnson* is distinguishable on the ground that it involved an equal apportionment between the insurers. Brady asserts that it would be inequitable to require it to pay the entire benefit when the 1991 injury is responsible for 80% of Trottier's current incapacity. As long as the percentage apportioned to Messer does not exceed the 1991 average weekly wage, Brady contends that Messer should be required to pay it. We disagree.

[¶ 18] We recognize that in some cases, the most recent insurer may be required to pay more than its proportion-

injury shall initially be responsible to the *employee for all benefits payable under this* Act.

**3. Subrogation.** Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Apportionment decisions made under this subsection may not affect an

employee's rights and benefits under this Act. The board has jurisdiction over proceedings to determine the apportionment of liability among responsible insurers.

2. There is no dispute regarding the amount of the partial benefit or that the 2002 average weekly wage is the controlling average weekly wage for the purpose of determining the amount of the partial benefit.

ate share of the benefit because the reimbursement it receives from a previous employer will be based on a lower average weekly wage. *Johnson*, 432 A.2d at 436. As we have stated numerous times, however, our apportionment statute is based on the principle of subrogation. *See, e.g., Juliano v. Ameri–Cana Transp.*, 2007 ME 9, ¶ 10, 912 A.2d 1244, 1248. The most recent insurer has the initial responsibility to pay the employee and then is subrogated to the employee's rights as against other insurers. 39–A M.R.S. § 354(2), (3) (2006). The most recent insurer has no right to reimbursement from other insurers unless the employee has that right. *Arsenault v. Thurston Co.*, 2004 ME 83, ¶ 9, 853 A.2d 217, 221. "This statutory scheme was designed to encourage prompt payment of benefits, while still providing the most recent payor with the *potential ability* to recover a portion of those payments from other responsible employers and insurers." *Id.* (emphasis added).

[¶ 19] Thus, in this case, Brady/Peerless's rights as against Messer/One Beacon are limited to Trottier's rights against Messer—which must be determined with reference to the law and average weekly wage at the time of the 1991 injury. As we stated in *Johnson*, "[i]t was never the purpose of our apportionment doctrine in the second or successive injury context to compound the risk already inherent in the first insurer's obligations by importing into that doctrine the uncertainties of a changing average weekly wage." 432 A.2d at 436. We also noted in *Johnson* that the most recent insurer still receives "a substantial financial benefit" as a result of apportionment, because, without appor-

tionment, the most recent insurer could be "liable for 100% of the compensation due." *Id.; accord Dunson*, 2003 ME 16, ¶ 12, 814 A.2d at 978 (noting employer at time of second work injury was required to pay a benefit calculated using the controlling average weekly wage, but prior employer would be required to reimburse second employer for benefits calculated using the average weekly wage at the time of the prior injury); *Juliano*, 2007 ME 9, ¶ 17, 912 A.2d at 1249–50 (holding Maine Insurance Guaranty Association is not obligated to reimburse the most recent insurer for amount apportioned to an earlier, insolvent insurer because a right of subrogation is not a claim covered by MIGA).

[¶ 20] Accordingly, Messer could be required to repay Brady 80% of the 1991 partial compensation rate calculated using the 1991 average weekly wage. However, applying 39 M.R.S.A. § 55–B, Messer owes nothing because Trottier's earning capacity exceeds the 1991 average weekly wage. Pursuant to section 354(2), Brady remains responsible for paying the entire benefit.

**B.   Offset of Unemployment Benefit**

■ [¶ 21] The hearing officer awarded Trottier 100% partial incapacity benefits for the two-month period after he was laid off from Brady and before he began working for Lavalley, with an offset for all unemployment benefits received. Messer contends that the offset should be applied to each date of injury, and because the amount of unemployment benefits exceeds the compensation rate calculated pursuant to 1991 law,[3] Messer is not liable for any portion of the 100% partial benefit.

---

**3.** Title 39 M.R.S.A. § 54–B (1989) *repealed by* P.L.1991, ch. 885, § A–7 (effective Jan. 1, 1993), in effect at the time of the 1991 back injury, provided that compensation for total incapacity was two-thirds of the average

weekly wage with an adjustment for inflation after the third year. That provision states:

> While the incapacity for work resulting from the injury is total, the employer shall pay the injured employee a weekly compen-

[¶ 22] Title 39-A M.R.S. § 220(1) (2006) provides that "Compensation paid under this Act . . . to any employee for any period for which the employee is receiving or has received [unemployment] benefits . . . must be reduced by the amount of the unemployment benefits." The statute in effect at the time of the 1991 injury contains nearly identical language. 39 M.R.S.A. § 62-A (1989) *repealed by* P.L. 1991, ch. 885, § A-7 (effective Jan. 1, 1993).[4]

[¶ 23] The record does not contain evidence of the amount of unemployment compensation Trottier received. The hearing officer ordered Brady to pay $369.01 per week, and Messer to reimburse Brady for 80% of the 1991 total compensation rate, or $138.42 per week. The hearing officer calculated Messer's portion without applying the offset, thus, the decree is unclear as to how the offset should be applied.

[¶ 24] Pursuant to the offset provisions, Trottier is entitled, for the designated period, to the 100% partial benefit based on the 2002 average weekly wage reduced by the amount of the unemployment benefit. Because this is a multi-injury case in which section 354 applies, the most recent employer/insurer, Brady/Peerless, is initially obligated to pay that amount to Trottier. Brady/Peerless is then subrogated to Trottier's right to recover any amounts for which Messer/One Beacon is liable to Trottier. Once again, the employee's rights as against the earlier employer must be determined pursuant to the law in effect and the average weekly wage at the time of the prior injury. Therefore, Messer would be obligated to reimburse Brady for 80% of the 100% partial benefit calculated pursuant to 1991 law with reference to the 1991 average weekly wage, less the offset amount.

[¶ 25] When determining the amount Messer is liable to Brady, the hearing officer attempted to calculate what Messer would owe Trottier based on the 1991 compensation rate, but did not give Messer the benefit of the offset. We remand for recalculation of the portion of the 100% partial benefit that Messer owes Brady, coordinated with the unemployment benefit.[5]

---

sation equal to 2/3 his average gross weekly wages, earnings or salary, but not more than the maximum benefit under section 53-B, nor less than $25 weekly.

    **1. Annual adjustment.** Beginning on the 3rd anniversary of the injury, weekly compensation under this section shall be adjusted annually. The adjustment shall be equal to the lesser of the actual percentage increase or decrease in the state average weekly wages, as computed by the Bureau of Employment Security, for the previous year or 5%.

**4.** Title 39 M.R.S.A. § 62-A(1) (1989) *repealed by* P.L.1991, ch. 885, § A-7 (effective Jan. 1, 1993), provided, *in relevant part:*

    **1. Reduction for unemployment benefits.** Compensation paid under this Act, except compensation under section 56-B and lump sum settlements, to any employee for any period with respect to which he is receiving or has received benefits under the employment security law, shall be reduced by the amount of unemployment benefits.

**5.** Messer also contends that the hearing officer erred in awarding Trottier 100% partial benefits during the period after he was laid off from Brady and before he started working for Lavalley because Trottier was laid off due to an economic downturn, not as a result of his work injury. *See Coty v. Town of Millinocket*, 393 A.2d 156, 157 (Me.1978) (affirming denial of benefits to employee who was laid off due to general economic conditions, not as a result of his work-related disability).

    The hearing officer determined however, that Trottier conducted a "diligent work search," and that he continues to be under work restrictions and continues to experience back and knee pain. It can reasonably be inferred from these findings that Trottier was unable immediately to find work at his 2002 level of compensation because of his work injuries. Trottier was therefore entitled to

### C. Nonwork Injury

[¶ 26] Messer finally contends that the hearing officer erred in holding it responsible for the percentage of incapacity attributable to the 2001 nonwork injury to Trottier's back, based on language in the 2003 consent decree. The hearing officer determined that Messer is responsible for that incapacity because it had "agreed by consent decree on October 14, 2003 that the incapacity following the boat-lifting incident was related to the September 12, 1991 injury." The consent decree states that "the Employee's claimed periods of total and partial incapacity, running from November 6–December 25, 2001 are causally related to his work-related back injury of September 12, 1991."

[¶ 27] Messer contends that the 2003 consent decree should not be interpreted to preclude it from disclaiming ongoing responsibility for that injury. The hearing officer's decision, however, constitutes a reasonable interpretation of the consent decree and involves no misapplication of the law; thus, we will not disturb it. *See Hoglund v. Aaskov Plumbing & Heating,* 2006 ME 42, ¶ 11, 895 A.2d 323, 326.

The entry is:

Vacate and remand for further proceedings consistent with this opinion.

---

benefits during the period between jobs. *See Mailman v. Colonial Acres Nursing Home,* 420 A.2d 217, 220 (Me.1980) (stating our decision in *Coty* did not alter the right of an injured employee to incapacity benefits if his ability to earn has been impaired as a result of his work-related injury).