MAINE SUPREME JUDICIAL COURT                                Reporter of Decisions
Decision:     2024 ME 38
Docket:       WCB-23-147
Argued:       February 7, 2024
Decided:      May 16, 2024
Revised:      June 4, 2024

Panel:        STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

DENNIS G. CROSEN

v.

BLOUIN MOTORS, INC., et al.

LAWRENCE, J.

[¶1] Blouin Motors, Inc., and its insurer, Maine Automobile Dealers' Association Workers' Compensation Trust (collectively Blouin) appeal from a decision of the Workers' Compensation Board Appellate Division affirming the decision of an Administrative Law Judge (*Elwin, ALJ*) denying Blouin's petition to apply the entire Social Security offset provided by 39-A M.R.S. § 221(3)(A)(1) (2024) to its compensation payments to its former employee, Dennis G. Crosen. We decline to accept the Appellate Division's interpretation of 39-A M.R.S. § 354(3) (2024) and conclude that Blouin is entitled to take the full offset provided by section 221(3)(A)(1). We therefore vacate the decision of the Appellate Division.

# I. BACKGROUND

[¶2]  The following facts are undisputed by the parties and were found by the ALJ.  *See* M.R. App. P. 23(b)(3); 39-A M.R.S. § 318 (2024) ("The administrative law judge's decision, in the absence of fraud, on all questions of fact is final . . . .").  Crosen is totally incapacitated due to the combined effect of two work-related injuries: in 1984, he injured his cervical spine while working for Rockingham Electric, Inc., and in 2002, he injured his lumbar spine while working for Blouin Motors, Inc.  The 1984 injury is forty percent responsible for Crosen's incapacity and the 2002 injury is sixty percent responsible for his incapacity.  On October 3, 2012, a hearing officer[1] (*Elwin, HO*) awarded ongoing total incapacity benefits and apportioned forty percent of the responsibility for the benefits to Rockingham and sixty percent of the responsibility for the benefits to Blouin.  *See* 39-A M.R.S. § 354(1) (governing the apportionment of liability when multiple injuries "combine to produce a single incapacitating condition and more than one insurer is responsible for that condition").  The hearing officer ordered Blouin to pay the entire compensation amount and ordered Rockingham and its insurer to reimburse Blouin for forty percent of

---

[1] The decision was issued before hearing officers were redesignated as administrative law judges. *See* P.L. 2015 ch. 297 (effective Oct. 15, 2015).

that amount. *See id.* § 354(3) (providing for "subrogat[ion] to the employee's rights under [the Workers' Compensation Act] for all [incapacity] benefits the insurer has paid and for which another insurer may be liable"). Blouin was ordered to pay Crosen $597.66 per week, and Rockingham's insurer reimbursed Blouin for its share of the incapacity benefits, which amounted to $227.66 per week.[2]

[¶3] In 2014, Crosen began collecting old-age insurance benefits under the United States Social Security Act, 42 U.S.C.A. §§ 301-1397f (Westlaw through Pub. L. No. 118-41). By statute, Blouin's obligation to pay weekly incapacity benefits based on the 2002 injury "must be reduced" by half of the amount of Social Security benefits that Crosen receives. 39-A M.R.S. § 221(3)(A)(1). No Social Security offset applies to the compensation that Rockingham owes for the 1984 injury. *See* P.L. 1985, ch. 372, § A-26, emergency clause (enacting the Social Security offset and providing that it applies only to injuries occurring on or after June 30, 1985). Although the full offset in this

---

[2] The Workers' Compensation Board hearing officer (*Elwin, HO*) ordered Rockingham's insurer to reimburse Blouin for "[forty percent] of such benefits, calculated using its 1984 average weekly wage (as adjusted for inflation)," but did not order cost-of-living adjustments to the sixty percent of the benefits for which Blouin is responsible. Rockingham's insurer paid Blouin its share of the weekly benefits including inflation adjustments, which Blouin then passed on to Crosen. *See Dunson v. S. Portland Housing Auth.*, 2003 ME 16, ¶ 16, 814 A.2d 972. This resulted in the total weekly incapacity benefit paid to Crosen increasing over time, but the dollar amount for which Blouin was responsible remaining static.

case—half of Crosen's weekly Social Security benefits—would result in a $233.76 reduction in Crosen's weekly incapacity benefit, the parties informally agreed that Blouin would instead reduce its incapacity benefit payment to Crosen by sixty percent of that amount, or $140.26 per week.[3]

[¶4]  In March 2021, Rockingham's insurer became insolvent and stopped reimbursing Blouin for the portion of the total compensation associated with the 1984 injury.  Since then, as required by *Maine Insurance Guaranty Ass'n v. Folsom*, 2001 ME 63, ¶ 13, 769 A.2d 185, Blouin has been paying Crosen 100 percent of the compensation ordered in the 2012 decree, less the $140.26 per week representing sixty percent of the full Social Security offset.

[¶5]  On July 12, 2021, Blouin petitioned the Board to apply the entire Social Security offset of $233.76 per week to the compensation that it pays Crosen.  On May 13, 2022, the ALJ denied Blouin's petition, citing 39-A M.R.S. § 354(3), which governs subrogation and provides that "[a]pportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act."  Blouin filed a motion for findings of fact and

---

[3]  Given that the compensation for the 1984 injury was not subject to a Social Security offset, it is unclear why the parties agreed that Blouin would apply sixty percent of the offset amount rather than the entire offset amount to its sixty percent portion of the total incapacity benefits owed.

5

conclusions of law on June 17, 2022. On July 12, 2022, the ALJ denied Blouin's motion.

[¶6] Blouin appealed the denial of its petition to the Appellate Division, arguing that, as the sole payor of incapacity benefits, it is entitled to take the full Social Security offset. The Appellate Division affirmed the ALJ's determination that Blouin's taking the full Social Security offset would impermissibly reduce Crosen's benefits in violation of section 354 and would be contrary to our decision in *Juliano v. Ameri-Cana Transport*, 2007 ME 9, ¶ 15, 912 A.2d 1244. Blouin petitioned for appellate review of the Appellate Division's decision, and we granted its petition. *See* 39-A M.R.S. § 322 (2024); M.R. App. P. 23(c).

## II. DISCUSSION

[¶7] Blouin argues that the Appellate Division erred in affirming the ALJ's decision for four reasons: first, 39-A M.R.S. § 221(3)(A)(1) mandates that the payor of incapacity benefits reduce its payments by the full Social Security offset, amounting to fifty percent of the recipient's weekly Social Security benefits; second, 39-A M.R.S. § 354 does not prohibit Blouin from taking the full offset because it does not reduce the incapacity benefits to which Crosen is entitled; third, we have previously permitted a full offset for Social Security benefits under similar circumstances, *see Berry v. H.R. Beal & Sons*, 649 A.2d

1101, 1103 (Me. 1994); and fourth, because Blouin is entitled to the full offset, it is also entitled to a credit for the overpayment of incapacity benefits paid since the cessation of reimbursement from Rockingham's insurer, during which time Blouin has not taken the full statutory offset. Crosen responds that permitting Blouin to apply the full offset would violate the Workers' Compensation Act and our precedent in *Juliano* by impermissibly reducing Crosen's benefits attributable to the 1984 injury.[4] *Juliano*, 2007 ME 9, ¶ 15, 912 A.2d 1244; *see* 39-A M.R.S. §§ 201(6), 354(3) (2024).

[¶8] We start by summarizing the standard of review and applicable rules of statutory construction and then interpret the Act in accordance with those standards. We also include a brief discussion of the applicability of *Berry* to this case.

**A. Standard of Review and Rules of Construction**

[¶9] In a workers' compensation case, "[w]e review questions of law, including statutory interpretation, de novo." *Freeman v. NewPage Corp.,* 2016 ME 45, ¶ 5, 135 A.3d 340 (quotation marks omitted). In construing the

---

[4] Crosen also argues that Blouin's appeal should be dismissed as improvidently granted pursuant to M.R. App. P. 23(c)(4). We decline to dismiss this appeal as improvidently granted because, as explained in this opinion, "[t]he decision on appeal contains a substantial error on a question of law resulting in substantial prejudice to one or more of the parties." M.R. App. P. 23(b)(2)(B).

Workers' Compensation Act, we attempt "to give effect to the Legislature's intent" by "look[ing] to the plain meaning of the statutory language, and constru[ing] that language to avoid absurd, illogical, or inconsistent results."[5] *Id.* (quotation marks omitted). We "defer to the Appellate Division's reasonable interpretation of the workers' compensation statute only if the statutory language is ambiguous." *Charest v. Hydraulic Hose & Assemblies, LLC*, 2021 ME 17, ¶ 10 n.6, 247 A.3d 709 (citation and quotation marks omitted).

## B.     Interpretation of the Workers' Compensation Act

[¶10]  Two sections of the Workers' Compensation Act are particularly relevant in this case: the statute governing apportionment of liability resulting from multiple injuries and the statute establishing the Social Security offset. The apportionment statute provides:

> ### § 354  Multiple injuries; apportionment of liability
>
> **1.  Applicability.** When 2 or more occupational injuries occur, during either a single employment or successive employments, that combine to produce a single incapacitating condition and more than one insurer is responsible for that condition, liability is governed by this section.

---

[5] By statute, the Workers' Compensation Act must be construed "to ensure the efficient delivery of compensation to injured employees at a reasonable cost to employers. All workers' compensation cases must be decided on their merits and the rule of liberal construction does not apply. Accordingly, this Act is not to be given a construction in favor of the employee, nor are the rights and interests of the employer to be favored over those of the employee."  39-A M.R.S. § 153(3) (2024).

**2. Liability to employee.** If an employee has sustained more than one injury while employed by different employers, or if an employee has sustained more than one injury while employed by the same employer and that employer was insured by one insurer when the first injury occurred and insured by another insurer when the subsequent injury or injuries occurred, the insurer providing coverage at the time of the last injury shall initially be responsible to the employee for all benefits payable under this Act.

**3. Subrogation.** Any insurer determined to be liable for benefits under subsection 2 must be subrogated to the employee's rights under this Act for all benefits the insurer has paid and for which another insurer may be liable. Apportionment decisions made under this subsection may not affect an employee's rights and benefits under this Act.

39-A M.R.S. § 354(1)-(3); *see Juliano,* 2007 ME 9, ¶ 15, 912 A.2d 1244 (reiterating that "apportionment decisions made under this subsection may not affect an employee's rights and benefits under th[e] Act." (alteration and quotation marks omitted)). In *Juliano*, which concerned a worker who was injured three times, an insurer that was responsible for compensation for the second and third injuries was obligated to pay the entire benefit amount, including the benefits (as adjusted for inflation) related to the first injury, after the insurer responsible for compensation related to the first injury became insolvent. 2007 ME 9, ¶¶ 2-3, 10-17, 912 A.2d 1244 (explaining that our reasoning was grounded in "the Legislature's decision to allocate the risk among insurers in multiple injury cases so that the most recent insurer has the

9

exclusive responsibility to pay the employee and is then subrogated to the employee's rights as against any other insurers").

[¶11]  The statute authorizing an offset against workers' compensation payments based on the employee's receipt of Social Security old-age insurance benefits provides, in relevant part:

**§ 221.  Coordination of benefits**

> **1.  Application.**  This section applies when either weekly or lump sum payments are made to an employee as a result of liability pursuant to section 212 or 213 [for total or partial incapacity] with respect to the same time period for which the employee is also receiving or has received payments for:
>
> > **A.**  Old-age insurance benefit payments under the United States Social Security Act, 42 United States Code, Sections 301 to 1397f . . .
> >
> > . . . .
>
> **3.  Coordination of benefits.**  Benefit payments subject to this section *must be reduced* in accordance with the following provisions.
>
> > **A.**  The employer's obligation to pay or cause to be paid weekly benefits other than benefits under section 212, subsection 2 or 3 [for presumed total incapacity and specific losses] *is reduced by* the following amounts:
> >
> > > (1)  Fifty percent[6] of the amount of the old-age insurance benefits received or being received under

---

6  This percentage reflects "the employer's share of social security taxes paid."  L.D. 1634, Statement of Fact, § A-26, at 66 (112th Legis. 1985).

the United States Social Security Act. For injuries occurring on or after October 1, 1995, such a reduction may not be made if the old-age insurance benefits had started prior to the date of injury or if the benefits are spouse's benefits . . . .

39-A M.R.S. § 221(1)(A), (3)(A)(1) (emphasis added).

[¶12] Section 221 was adopted "to keep injured employees from receiving more income from a combination of Social Security or retirement benefits plus workers' compensation benefits than they would receive if they continued to work." *Foley v. Verizon*, 2007 ME 128, ¶ 7, 931 A.2d 1058; *see also Ricci v. Mercy Hosp.*, 2002 ME 173, ¶ 10, 812 A.2d 250 (recognizing five purposes for the coordination of benefits: "(1) to reduce insurance premiums and prevent carriers from withdrawing business from the state; (2) to ensure a minimum income during the period of an employee's incapacity; (3) to prevent a double recovery of both retirement and compensation benefits; (4) to prevent the stacking of benefits; and (5) to alleviate the burden on employers who are required to pay into the workers' compensation and social security systems" (citations and quotation marks omitted)). Section 221 provides that benefit payments "*must be* reduced in accordance with" its provisions, and that an "employer's obligation to pay or cause to be paid weekly benefits . . . *is reduced by*" the Social Security offset. 39-A M.R.S. § 221(3)(A)(1) (emphasis added).

Whenever it applies, the Social Security offset necessarily reduces the amount of workers' compensation that the employee is entitled to receive. *See id.*

[¶13] We decline to adopt the Appellate Division's interpretation of the Act, as preventing Blouin from taking the full Social Security offset, for three reasons. First, section 221(3)(A)(1) does not apply to the incapacity benefits Crosen receives due to his 1984 injury; section 221 applies only to the incapacity benefits attributable to his 2002 injury. *See* P.L. 1985, ch. 372, § A-26, emergency clause. Contrary to the arguments and assumptions of both parties, the statute contains no reference to a partial reduction or an apportionment of the offset based on an insurer's share of responsibility for the incapacity. *See* 39-A M.R.S. § 221. Though Blouin appears to have agreed initially to take only sixty percent of the offset to reflect its share of responsibility for the incapacity, *see supra* ¶ 3 & n.3, the statute does not require or otherwise contemplate such a partial offset, *see* 39-A M.R.S. § 221. Blouin's payments "must be" reduced in accordance with section 221(3)(A)(1), and Blouin is entitled to reduce its payments by the full offset of $233.76 per week.

[¶14] Second, Blouin's taking of the full Social Security offset is not apportionment that impermissibly reduces Crosen's benefits. *See id.* § 354(3). The Social Security offset provision applies only to the 2002 injury (and the

incapacity benefit obligation is no longer shared among multiple insurers), so there is no basis for or need to apportion the offset. *See* P.L. 1985, ch. 372, § A-26, emergency clause. By taking the full offset, Blouin does not affect the portion of Crosen's benefit associated with the 1984 injury. The reduction in Crosen's benefit associated with the 2002 injury that will occur if Blouin takes the full offset coheres with the goals underlying section 221 by preventing recovery of both retirement and incapacity benefits. *See Ricci*, 2002 ME 173, ¶ 10, 812 A.2d 250. For the reasons noted in the preceding paragraph, section 221 requires Blouin to apply the total offset. Doing so would not violate section 354.

[¶15] Third, this case is distinguishable from *Juliano*. Here, unlike in *Juliano*, Blouin did not challenge the original apportionment of liability between Blouin and Rockingham and it has not argued that any subrogation is available now that Rockingham's insurer is insolvent. *Cf. Juliano*, 2007 ME 9, ¶¶ 15, 17, 912 A.2d 1244. Blouin simply argues that it should be able to apply the full Social Security offset of $233.76 to the portion of the benefit for which it was originally responsible. We agree.

13

## C.     *Berry* Is Controlling Precedent

[¶16]  Contrary to the conclusion of the Appellate Division, Blouin argues that *Berry* controls the outcome of this case.  *See* 649 A.2d 1101, 1103.  Crosen argues that *Berry* explicitly avoided addressing the issue of whether an offset that applied only to one of multiple injuries and exceeded the incapacity benefit attributable to that injury should be prorated to reflect the percentage that the relevant injury contributed to the employee's incapacity.  *See id*. at 1103 n.5.

[¶17]  In *Berry*, an employee had two work-related injuries.  The first occurred in 1977 while he was working for H.R. Beal & Sons, which at the time was insured by Fireman Fund Insurance Company.  The second occurred in 1990, also while he was working for H.R. Beal & Sons, but which by then was insured by Commercial Union Insurance Company.  *Id.* at 1101-02.  In response to petitions by the parties, the Workers' Compensation Commission[7] determined that each injury was fifty percent responsible for the employee's incapacity and that the employee's benefits were subject to the full Social

---

[7] At the time of the events in *Berry*, the agency that is now the Workers' Compensation Board was named the Workers' Compensation Commission.  *See* 39 M.R.S.A. § 91 (1989); P.L. 1991, ch. 885, § A-9 (effective Jan. 1, 1993).

Security offset.[8] *Id.* at 1102. On appeal, we affirmed the Commission's decision because, though only the second injury was subject to the offset, the amount of the offset was less than the benefit allocable to the second injury. *Id.* at 1103. We "express[ed] no opinion as to the result if the social security offset exceeded the workers' compensation benefit allocable to injuries occurring on or after June 30, 1985." *Id.* at 1103 n.5 (quotation marks omitted).

[¶18] Crosen is correct that *Berry* did not decide whether an offset that exceeds the benefit from a qualifying injury should be prorated; however, that question is of no moment here because the facts of this case are *directly analogous* to the facts of *Berry*. Here, the full Social Security offset is $233.76 per week, which is less than the weekly compensation associated with Crosen's 2002 injury. Under the express holding in *Berry*, Blouin is entitled to take the full offset.

### III. CONCLUSION

[¶19] As we held in *Berry*, the plain language of section 221(3)(A)(1) directs insurers to reduce qualifying workers' compensation incapacity benefits by fifty percent of the worker's Social Security benefits—regardless of

---

[8] The Social Security offset relevant to the appeal in *Berry* was codified at 39 M.R.S.A. § 62-B (1989). No meaningful differences exist between former section 62-B and the current statute, 39-A M.R.S. § 221(3)(A)(1).

whether the qualifying incapacity benefits only comprise a portion of the total compensation received for the worker's incapacity. 649 A.2d at 1101-03.

[¶20] In accordance with our opinion in *Urrutia v. Interstate Brands International*, Blouin may be entitled to a credit for the portion of the offset that, prior to this case, it did not take. 2018 ME 24, ¶¶ 16, 21-22, 179 A.3d 312 ("[B]oth the plain language of section 221(1) and its underlying purpose—to prevent a double recovery by the employee—establish that the Legislature intended that an employer is entitled to a 'credit' for past overpayments resulting from the employee's receipt of Social Security retirement benefits during the same period when the employer was required to make the incapacity benefit payments."). Based on the record in this matter, however, the issues of the extent of Blouin's credit for overpayment and the means through which Blouin might recover that overpayment under the pertinent provisions of the Workers' Compensation Act are not properly before us.[9] We therefore remand this matter to allow the parties an opportunity to further

---

[9] It is not clear from the majority decision in *Urrutia* whether 39-A M.R.S. § 324 (2024) authorizes the ALJ to order a payment holiday or other credit. *See Urrutia v. Interstate Brands Int'l*, 2018 ME 24, ¶ 22, 179 A.3d 312; *see also id.* ¶¶ 29-35 (Jabar, J., dissenting) (arguing that the section 221 credit applies only to overpayments made by employers during the pendency of an appeal or motion for findings of fact or conclusions of law); 39-A M.R.S. § 221(3)(B).

develop these issues and for a determination on these issues by an administrative law judge and the Board.

The entry is:

> The decision of the Appellate Division is vacated. Remanded to the Appellate Division with instructions to remand the matter to the ALJ for further proceedings consistent with this opinion.

---

John J. Cronan III, Esq. (orally), Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellant Blouin Motors, Inc., and the Maine Automobile Dealers' Association Workers' Compensation Trust

Kevin M. Noonan, Esq. (orally), McTeague Higbee, PA, Topsham, for appellee Dennis G. Crosen

Workers Compensation Board Appellate Division case number 22-0011
FOR CLERK REFERENCE ONLY